STATE OF NEW JERSEY IN THE MATTER OF T. G., A MINOR.

Juvenile and Domestic Relations Court
Bergen County

February 26, 1980.

*Richard J. Murphy,* Deputy Attorney General, for New Jersey Division of Youth and Family Services (*John J. Degnan,* Attorney General).

No appearance on behalf of the Bergen County Child Placement Review Board.

POLITO, J. D. C. (temporarily assigned).

This proceeding was brought in response to a controversy regarding the recent Child Placement Review Act, *N.J.S.A.* 30:4C–50 *et seq.* (the act). The controversy involves the extent of the jurisdiction of the court and the civilian review boards designated by the act to review cases after the Division of Youth and Family Services (hereinafter DYFS) has been given guardianship of a child. The court was also requested to determine the extent of a review board's participation in any court hearings.

DYFS, represented by the Attorney General, contends that once guardianship is entered pursuant to *N.J.S.A.* 30:4C–15, the jurisdiction of the court ceases. Its position is that the granting of guardianship is equivalent to permanent placement of the child. Under *N.J.S.A.* 30:4C–53 of the act the court's jurisdiction ends when it receives notification of the return home or alternative permanent placement of the child. Therefore, if the grant of guardianship is the equivalent of permanent placement, the court's jurisdiction ends upon that grant. The Attorney General also cites *N.J.S.A.* 30:4C–21 in support of his contention that a guardianship order ends the court's jurisdiction. According to this section, an order of commitment should not be restrictive of DYFS' exclusive guardianship.

The Attorney General further argues that since the review boards are only to be used as an arm of the court, *N.J.S.A.* 30:4C–57, their jurisdiction cannot exceed that of the court. Therefore, when the court grants DYFS guardianship, both the review board and the court lack jurisdiction to review any future placements that DYFS might make.

■ The act clearly indicates that the court does *not* lose its jurisdiction when it grants guardianship to DYFS. This continuing jurisdiction is retained by the court whether the guardianship order is made pursuant to a voluntary agreement or after parental rights are terminated. The act gave the Juvenile and Domestic Relations Court the authority to review placements made by DYFS. According to the terms of the act, *N.J.S.A.* 30:4C–52(b), a child placed outside the home "means a child under the care, custody or *guardianship* of the division." (Emphasis supplied). The entire act speaks to the procedure for reviewing the placements of children by DYFS. To adopt the definition of guardianship propounded by the Attorney General would weaken the reviewing powers of the court substantially. It was not the intent of the legislators to reduce the power of the court. According to the legislative declarations in the act, *N.J.S.A.* 30:4C–51, the clear intent of the law is to provide periodic review of each child in placement in order to establish either an alternative permanent home or to return him to his home.

Pursuant to *N.J.S.A.* 30:4C–55, DYFS is required to submit a plan for the eventual return home or permanent placement of each child placed outside the home. The submission of such a plan would be pointless if the court did not retain jurisdiction to review the placement. The fact that a child under the guardianship of DYFS, *i. e.,* placed outside of his home, must have a plan submitted on his behalf for eventual permanent placement clearly indicates that guardianship is not the equivalent of permanent placement.

The Attorney General's reliance on *N.J.S.A.* 30:4C–21 as an indication of the court's lack of jurisdiction in guardianship cases is misplaced.

This section does indeed say that the control of DYFS over a child under its guardianship is to be unrestricted. However, it also provides that DYFS may be removed as a guardian upon a showing of good cause by a court of competent jurisdiction. Therefore, although DYFS has complete control over the child the statute still allows a court to review the division's actions upon charges preferred.

Furthermore, this statute preceded the current Child Placement Review act. Even assuming *arguendo* that a conflict exists between the new Child Placement Review act, *supra*, and the older guardianship statute *N.J.S.A.* 30:4C–1 *et seq.* the more recent enactment should take precedence. *City of Newark v. Dept. of Civil Service*, 68 *N.J.Super.* 416, 427 (App.Div.1961).

A recently decided case in the Hudson County Juvenile and Domestic Relations Court, *DYFS v. D. T. & J. T.*, 171 *N.J.Super.* 520, 527 (J. & D.R.Ct.1979) supports the position of this court. The court there was convinced that parental rights should be terminated. However, the court went on to say that " . . . pursuant to the Child Placement Review Act, *supra*, the court has continuing jurisdiction of children in placement, including those under the guardianship of DYFS. *N.J.S.A.* 30:4C–52b." *Ibid.*

This court is also convinced that it has jurisdiction to review placements made by DYFS of children under their guardianship.

Until a child has actually been adopted no permanency can be attributed to his situation. In *Scanlon v. Scanlon*, 29 *N.J.Super.* 317 (App.Div.1954) the court awarded custody of a child to the Catholic Charities in Newark. It stated in its decision that . . . "the judgment in its relation to the custody of the child is always temporary in nature and may be changed at any time as

the future conditions and circumstances reasonably recommend." *Id.* at 327.

This State's highest court in a recent adoption case stated . . . "Adoption, being immutable, is quite different from a mere award of custody, which is impermanent and subject to alteration as changing circumstances require." *In re Adoption of Children by D,* 61 *N.J.* 89, 93 (1972).

A child under the guardianship of DYFS cannot be said to be in an immutable position. There is no permanency in the situation. The possibility of a change in the child's placement always exists. Therefore until the child has been adopted the court retains its jurisdiction and power to review.

The present controversy was triggered when one of the review boards wanted to delay the adoption of a child which DYFS had placed in foster care. DYFS contended that the court and the review board lacked jurisdiction to conduct the review. In a similar situation which occurred prior to enactment of the Review Act in question here, the Superior Court held that it had such jurisdiction. *M v. Family & Children's Services Inc.,* 130 *N.J.Super.* 214 (Ch.Div.1974). In that case a woman sought to adopt a child which she had under her care but the Children's Service Corp. disapproved. The court held that the agency's decision to remove the child from adoption is subject to the same judicial review as is the agency's decision to withhold consent to adoption. *Id.* at 221. Although in this case the agency disapproved rather than approved the adoption the principle still holds true. There is no loss of jurisdiction until the adoption has taken place.

## II

The other issue presented by this proceeding is the extent of a review board's participation in any court hearings. The review boards are not entitled to legal representation at review

hearings. The review boards are to be used in an advisory capacity. *N.J.S.A.* 30:4C–57 specifically authorizes these boards to assist the court in reviewing placements. As such they are considered an arm of the court and therefore no legal representation is necessary for them. The Attorney General correctly points out that the authority of these boards cannot exceed that of the court. However, since it is proper for the court to review the placement of a child under the guardianship of DYFS, so too may the review board aid in such a review.

Although the boards, pursuant to the act, may review child placements under the guardianship of DYFS, they are not entitled to participate in court hearings unless the court specifically requests their presence, *N.J.S.A.* 30:4C–61. Their review of child placements is generally limited to the written materials it receives through the act, *N.J.S.A.* 30:4C–59.