710 A.2d 542

S.R., PLAINTIFF–APPELLANT, v. DIVISION OF
YOUTH & FAMILY SERVICES, R.V.D. AND
C.D.V., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 20, 1998 (by telephone)—Decided June 9, 1998.

Before Judges MUIR, Jr., KESTIN and CUFF.

*Francis X. Gavin* argued the cause for appellant.

*Lynn B. Norcia,* Deputy Attorney General, argued the cause for respondent Division of Youth and Family Services (*Peter Verniero,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. Norcia,* on the brief).

*Emily Arnow Alman* argued the cause for respondents R.V.D. and C.V.D. (*Alman and Michaels,* attorneys; *Ms. Alman,* of counsel and on the brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Plaintiff appeals from the trial court's March 26, 1997 order dismissing with prejudice her complaint for custody of her grand-daughters, S.M.R. and L.N.R., on the motion of defendant Division of Youth and Family Services (DYFS). Defendants R.V.D. and C.V.D. are the foster parents of the children, approved by DYFS to adopt them. The foster parents' counterclaim for guardianship of the children was also dismissed. There is no appeal from that provision of the order.

S.M.R. and L.N.R. are two of seven siblings whose birth parents were first convicted in 1989 of abusing their then three children. After the parents' incarceration, they and the three children were reunited in early 1990. The two children whose custody is at issue herein were born thereafter, in October 1990 and August 1991, respectively. In early 1992, DYFS again intervened with the family. In April 1992, the birth parents formally surrendered custody of one of the older children, then six years old, and consented to her adoption. The child was placed with plaintiff, her paternal grandmother, who eventually, in 1994, adopted her.

By mid–1992, the four children remaining with the birth parents had also been removed from the parents' care at DYFS's instance. Shortly following, two of the four came to reside with plaintiff and their sister. The two who are the focus of this proceeding came into the care of the foster parents when they were eighteen and eight months old respectively. They have resided with the foster parents ever since.

About a year later, in July 1993, the sixth child was born and was immediately placed in foster care. He soon came to reside with the foster parents. After about a year, foster care of that child was transferred to plaintiff.

In May 1993, DYFS filed a complaint seeking termination of parental rights and guardianship as to all of the children except the one who had previously been surrendered. Trial of the termination/guardianship proceeding was delayed until August

1996, because the birth parents had once again been indicted for child abuse. In the interim, the birth parents fled the State and were ultimately apprehended in Arizona. While the parents were fugitives, they gave birth to a seventh child who, it has been represented, is in the care of Arizona's child protection agency.

From an early point in S.M.R.'s and L.N.R.'s placement with the foster parents, plaintiff maintained a relationship with them through visitation, which occurred on a regular basis until about May 1995 and was more sporadic thereafter. Some issues had arisen between plaintiff and the foster parents concerning visitation. DYFS's recommendation that they seek to resolve those problems with the assistance of a professional mediator was rejected by both sides.

On July 9, 1996, plaintiff and the foster parents met with the manager of DYFS's Northern Regional Adoption Center to discuss plans for the children's futures. They were advised that DYFS had determined, in accordance with its experts' evaluations, that the best interests of S.M.R. and L.N.R. would be served by continuing the foster home arrangement with a goal of eventual adoption by the foster parents. Plaintiff was informed that two procedural options were available to her in seeking to modify that determination: an administrative review could be sought through DYFS, or judicial review could be had through the Child Placement Review Board. In a July 22 letter, plaintiff formally protested the DYFS determination and "request[ed] a judicial review of this matter before the Child Placement Review Board as soon as possible"; and she communicated with DYFS's administrative review officer also requesting an administrative review. Shortly thereafter, however, plaintiff's attorney advised that plaintiff would not go forward with the child placement review, but would take steps instead to intervene in the pending guardianship proceeding. This was confirmed in a July 29, 1996 letter from court personnel to plaintiff, referring to a conversation with plaintiff's attorney. DYFS's administrative review officer, apparently aware of plaintiff's choice, advised her in a letter dated August 5, 1996,

confirming two telephone conversations, that "it would appear to be more advantageous for you to request a summary hearing before the Warren County court concerning the placement of [the children]." The record discloses no effort by plaintiff to intervene in the termination proceedings.

Trial in the termination/guardianship proceeding began on August 12, 1996. On August 26, 1996, the trial court entered a judgment and order based upon the testimony and other evidence received at trial. The parental rights of the birth parents were terminated, and guardianship of all five children subject to the court's jurisdiction was granted to DYFS "for all purposes, including the placement of the minors for adoption[.]"

On January 14, 1997, plaintiff filed the instant complaint for custody. DYFS moved to dismiss the complaint. After oral argument on the return date of the motion, March 26, 1997, before the same judge who had heard and ruled upon the termination/guardianship petition, the trial court dismissed the complaint with prejudice. The reasons for this determination were articulated on the record.

Under the prevailing statutory scheme, *N.J.S.A.* 30:4C–20 to –22, once a trial court terminates parental rights and reposes guardianship in DYFS, the post-termination guardianship authority of DYFS is plenary, as "absolute" as that of a parent. *Division of Youth & Fam. Servs. v. B.G.S.*, 291 *N.J.Super.* 582, 595–96, 677 *A.*2d 1170 (App.Div.1996); *In re Guardianship of R.O.M.C.*, 243 *N.J.Super.* 631, 633–34, 581 *A.*2d 113 (App.Div.1990). This is not to say that the trial court, as a matter of inherent authority, may not, in the best interests of the children, undo that which it created, revisiting its guardianship ruling, by way of reconsideration or otherwise, especially where the guardianship order was recently entered and no adoption proceeding has yet begun. For this to occur, an interested party must, at the very least, make a clear showing of manifest error in the guardianship ruling in terms of the best interests of the children involved, or of a denial of a fair opportunity to be heard in the guardianship proceeding.

*Cf. R.* 4:49–2; *R.* 4:50–1. Absent any such showing, after guardianship has been granted, the court's authority over DYFS's decisions concerning the welfare of children committed to its care is no greater than the court's authority over any parent.

On its face, plaintiff's complaint seeks residential custody of S.M.R. and L.N.R. in the context of DYFS's authority as legal guardian and in the face of DYFS's determination that residential custody should be elsewhere, *i.e.,* with the foster parents. We are in substantial agreement with the trial court's view that its authority does not extend to a review of DYFS's custody decisions in the ordinary course of guardianship events, in the absence of a charge of failure to supervise the welfare of the children properly, such as through a showing that instances of abuse or neglect have not been adequately addressed. *See N.J.S.A.* 30:4C–21.

Even if we were to construe the complaint as a motion to reconsider the guardianship order or for relief from its terms, plaintiff has made no adequate showing that a modification ought to occur. Except for plaintiff's allegations that S.M.R. and L.N.R. would be better off living with her, their paternal grandmother, and reunited with their siblings, plaintiff has made no proffer tending to lend factual support to those contentions or tending to overcome the proofs in the guardianship proceeding that the children were well cared for by the foster parents and had bonded with them. Nothing is offered to countervail the reasonable expectation that the children would suffer damage from a disruption of the bonds that came to exist during the four-and-one-half years in which they resided with the foster parents and the other children in the foster household from the time of their placement at eighteen and eight months of age until the filing of this complaint. In short, no adequate *prima facie* showing has been made that the best interests of the children require a change in the current custodial arrangement.

Plaintiff's collateral attack on the guardianship proceeding and the order emanating therefrom must also be viewed through the lens of her prior opportunities to pursue other remedies, and her

failure to do so when those courses were available to her. Although evincing some intentions to seek both administrative review within DYFS and judicial review through the Child Placement Review process, plaintiff did not carry through with either. Although advising that she intended to seek to intervene in the guardianship proceeding itself, plaintiff made no such motion. Plaintiff argues before us that she was discouraged by DYFS personnel from pursuing these avenues. She was, however, well represented by able counsel at the time.

Plaintiff had ample prior opportunity to raise the issues she now seeks to litigate in a context which is ordinarily precluded by statute. We discern nothing about this matter that is extraordinary in the sense contemplated by law. Neither the trial court nor we have, to date, been given any reason to apprehend that the children's best interests are not well served by the guardianship order and DYFS's permanency plan.

Accordingly, the trial court's order dismissing the complaint is affirmed.