791 A.2d 256

IN THE MATTER OF E.M.B. AND J.B., MINORS.

Superior Court of New Jersey
Appellate Division

Argued December 4, 2001[1]—Decided February 13, 2002.

[1] This appeal was submitted for decision without oral argument on the December 5, 2001 calendar; however, we granted a request for oral argument and the appeal was telephonically argued on December 4, 2001.

Before Judges NEWMAN, FALL and AXELRAD.

*Jane S. Blank,* Deputy Attorney General, argued the cause for appellant, New Jersey Division of Youth and Family Services (*John J. Farmer, Jr.,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. Blank,* on the brief).

*Bruce S. Etterman* argued the cause for respondents, E.D. and H.D. (*Hellring Lindeman Goldstein & Siegal,* attorneys; *Mr. Etterman,* on the brief).

*Deborah Berk,* Assistant Deputy Public Defender, argued the cause as Law Guardian of E.M.B. and J.B. (*Peter A. Garcia,* Acting Public Defender, Law Guardian; *Ms. Berk,* on the brief).

The opinion of the court was delivered by

FALL, J.A.D.

On leave granted appellant, New Jersey Division of Youth and Family Services (DYFS), appeals from orders entered in the Family Part subsequent to termination of the parental rights of the birth parents, directing DYFS to develop a new placement plan in accordance with the recommendations of the child placement review board, and scheduling a hearing to determine the

permanency placement plan that serves the best interests of the children.

The issues in this case center on a dispute between DYFS, the maternal grandparents and the child placement review board concerning the goal of the permanency placement plan for children whose birth parents' parental rights have been terminated. All parties agree that termination of the parental rights of the birth parents and placement for adoption serves the best interests of the children. However, the permanency plan presented by DYFS contends foster parent adoption ensures the best interests of the children. The maternal grandparents contend adoption of the children by them serves the best interests of the children. Upon its review of the DYFS plan, the child placement review board reported to the court its recommendation that the permanency placement plan that ensures the safety and health and serves the best interest of the children is grandparent adoption. The trial court has ordered a summary hearing to resolve that dispute.

This appeal raises significant issues regarding the effect of a judgment of guardianship on the roles of DYFS, the court, and the child placement review board. Under the circumstances of this case, we hold that the termination of the parental rights of the birth parents in the guardianship action did not divest the child placement review board or the Family Part of their jurisdiction to review the permanent placement plan submitted by DYFS in accordance with the provisions of the Child Placement Review Act (the Act), *N.J.S.A.* 30:4C–50 to–65.

A detailed review of the factual and procedural history is necessary. E.M.B. was born on February 3, 1997; J.B. was born on October 8, 1998. M.A.B. is the mother and J.E.B. is the father of these children. E.M.B. tested positive for marijuana and methadone at birth. On February 7, 1997, custody of E.M.B. was vested with DYFS by the court upon the initiation of a Title 9 child abuse and neglect complaint in the Family Part against the parents, docketed as FN–12–185–97.

For a period of time, E.M.B. was placed with J.E.B. However, on August 3, 1998, DYFS discovered that E.M.B. was living in deplorable conditions, and the child was removed from J.E.B.'s home and placed in foster care, where he has been since.

J.B. tested positive for methadone at birth, was removed from his parents, and has been in foster care since November 5, 1998.

Despite being offered and provided services, programs and treatment by DYFS, neither parent has followed through nor made efforts to overcome his or her substance abuse problem and other parental deficiencies. Both M.A.B. and J.E.B. relocated to Florida and have not visited with the children since November 3, 1999.

Consistent with its policy to place children with relatives when possible, upon removal of the children from their parents, DYFS attempted to place the children with the maternal grandparents, E.D. and H.D., who reside in New York City. Prior to J.B.'s birth, an order was entered in the Title 9 action on February 21, 1997, ordering a priority interstate assessment concerning the possible placement of E.M.B. with E.D. and H.D. An order entered in that action on March 7, 1997, directed that the interstate evaluation be expedited. However, by letter dated April 23, 1997, New York's Administration for Children's Services advised DYFS that E.D. and H.D. were unable to care for E.M.B. due to the chronic thyroid condition of H.D.

Numerous orders were entered in the Title 9 action directing that the parents and children be provided with services, programs and supervised visitation. The parents failed to comply with or benefit from these services and it became increasingly evident that the original goal of reunification of the children with their parents would not be in the best interests of the children.

In January 2000, E.D. and H.D. expressed an interest in obtaining custody of both E.M.B. and J.B., and adopting them. On February 16, 2000, an order was entered, again requesting an interstate evaluation of E.D. and H.D. for possible placement of

the children with them, noting that it was "critical for prompt eval[uation] given the length of time [the] children have been in foster care." The order also provided that E.D. and H.D. be given increasing visitation, "including unsupervised visitation as soon as possible when deemed appropriate by DYFS."

An order was entered in the Title 9 action on March 29, 2000, granting E.D. and H.D. legal custody of the children, with physical custody remaining with the foster parents. Specifically, the order stated that E.D. and H.D. were "granted joint legal custody for the purpose of obtaining educational opportunities for the children; the plan being to give them legal custody, then they will adopt them." The order was "self executing in regards to transferring custody to [E.D. and H.D.] subject to [a] transition plan being agreed to by DYFS, . . . [the] foster parent[s] [and E.D. and H.D.]"

An order entered on May 31, 2000 provided that custody, care and supervision of E.M.B. and J.B. shall continue with DYFS; physical custody of the children shall remain with the foster parents; unsupervised visits between the children and E.D. and H.D. shall proceed each week during weekends and other extended periods; the DYFS permanency plan of adoption of the children by E.D. and H.D. was accepted by the court; and DYFS was to file a guardianship complaint within sixty days.

On June 5, 2000, DYFS filed a guardianship complaint against M.A.B. and J.E.B., docketed as FG–12–50–00, seeking termination of their parental rights as to E.M.B. and J.B., and the placement of the children in the guardianship of DYFS for all purposes, including placement for adoption. Notably, at the time the guardianship complaint was filed, the permanency plan approved by the court in the May 31, 2000 order contemplated adoption by E.D. and H.D. An order entered on June 28, 2000 dismissed the child abuse and neglect action.

M.A.B. and J.E.B. were served with the guardianship complaint in Florida; however, they failed to respond or otherwise oppose the relief sought in the complaint.

A home evaluation report of E.D. and H.D. dated July 7, 2000 by the City of New York Administration for Children's Services stated, in pertinent part:

There is no reservation in making a strong recommendation that [E.D. and H.D.] be granted custody of their grandchildren [E.M.B. and J.B.]. [E.D. and H.D.] appear perfectly capable of providing a healthy and loving environment for their grandchildren. We are, therefore, approving the placement plan for the children in the home.

A case management order in the guardianship action was entered on August 9, 2000, directing completion of a bonding evaluation to assess the relationship of the children with the foster parents, and with E.D. and H.D. The order further provided that pending the results of the bonding evaluation the children were to remain in foster care placement.

At the request of DYFS, Dr. Lori Goldblatt, a psychologist, performed the ordered psychological and bonding evaluation. In her September 29, 2000 report, Dr. Goldblatt found that both children were bonded and attached to the foster parents, noting that

If the children were removed from their foster parents, they would initially suffer a grief reaction, since this is the only home that [J.B.] knows and the only stable home that [E.M.B.] knows. [J.B.], especially, would likely have a very strong grief reaction. However, since he is less than two, the trauma of this loss may be easier to overcome. [E.M.B.] has lived with the [foster parents] since he was eighteen months old and knows no other real home. If he were removed from the [foster home], he might revert to early autistic behavior and confusion, as demonstrated by his behavior in the train station. He could likely get adequate support from his grandparents in overcoming this loss. But he might also experience additional confusion if he is left with a neighbor whom he doesn't know well either. [E.M.B.] needs consistency of routine and people in his life, in addition to appropriate educational experiences and stimulation, to maximize his potential, given his current level of developmental delays.

. . . .

Both children have also adjusted to having their grandparents in their lives and enjoy these visits. It is unclear, though, how committed [E.D. and H.D.] are to having permanent full-time custody of their grandchildren. They were aware that the grandchildren were in foster care for at least one and one-half years before they came forward to state that they could now care for them. [E.D. and H.D.] stated they couldn't care for [E.M.B.] when he was first born due to [H.D.'s] medical problems. However, they have not been able to identify a permanent alternative other than a babysitter, if either one of them should again become

incapacitated, or in some way unable to care for the children full time. Ideally, the children should be raised by a biological relative if one is available to care for them. However, this may not necessarily be the best solution for these children. The [foster parents] have been more than willing to facilitate regular visitation with the grandparents and have gone out of their way to ensure that the children have consistent contact with their grandparents. They have also stated that they would have no problem continuing this arrangement, if they were granted custody. My recommendation is to grant physical custody to the [foster parents] with continued regular visits with their grandparents, so the children may have the benefit of both the parental relationship *and* the grandparent relationship that they already appear to enjoy.

An order entered on October 5, 2000 continued the weekend visitation for E.D. and H.D. with the children, afforded them the opportunity to obtain an independent bonding evaluation, and scheduled a case management conference for October 16, 2000.

On October 16, 2000, M.A.B. and J.E.B. failed to appear. The court granted the application of DYFS for entry of default against M.A.B. and J.E.B. and directed DYFS to present its proofs on the guardianship complaint through an affidavit of proof. DYFS advised the court that its permanency plan for the children had changed from grandparent adoption to foster parent adoption. E.D. and H.D. were not present at the October 16, 2000 hearing; however, their counsel was present and requested an adjournment to allow completion of the bonding evaluation permitted by the October 5, 2000 order. At that time, the trial court determined it had "no jurisdiction to decide in which home the children should be placed for the purpose of adoption[.]" DYFS agreed to cooperate with the completion of the independent bonding evaluation and advised the court that E.D. and H.D. could contest the change in the DYFS permanency plan by pursuing available administrative remedies.[2]

By letter to E.D. and H.D. dated October 27, 2000, DYFS stated:

---

[2] The record supplied does not contain a copy of the transcript of the October 16, 2000 hearing. This history is derived from the recitations contained in the order of guardianship, which was not executed until six months later on April 16, 2001.

This [is] to advise [you] that after careful consideration of the facts in this case a decision has been made to rule you out as prospective caretakers for your grandchildren, [E.M.B.] and [J.B.] We feel that it would be in the best interest of the minor children for them to remain in the home of their current caretakers and that adoption by these caretakers be consummated.

You have the right to request a formal review of this decision by the Metropolitan Adoption Resource Center, District Office Manager. If you would like to request a review, please contact the undersigned within ten (10) days of receipt of this letter . . .

By letter dated November 3, 2000, counsel for E.D. and H.D. informed DYFS that his clients requested an administrative hearing to review DYFS's decision set forth in its October 27, 2000 letter.

As a result of the October 16, 2000 hearing, an affidavit of proof of Constance Charleston, a DYFS Family Services Specialist, dated January 12, 2001, was submitted to the court in support of DYFS's application for entry of default judgment against M.A.B. and J.E.B. In her affidavit, Ms. Charleston incorporated by reference "each and every averment of facts set forth in the Complaint for Guardianship, Docket No. FG–12–50–00 and the Protective Service Complaint filed under Docket No. FN–12–185–97A as if these averments were set forth as statements of fact in this Affidavit." Ms. Charleston further stated that "[t]he purpose of this incorporation is for the Court to consider the averments in both Complaints as facts in making its decision to terminate the parental rights of [M.A.B.] and [J.E.B.]"

In accordance with the October 6, 2000 order, Dr. Jerome Goodman, a psychiatrist, performed a bonding evaluation at the request of E.D. and H.D. In his February 2, 2001 report, Dr. Goodman found the children "are affectionate and closely bonded with [their foster mother]." He also found the children to be bonded with E.D. and H.D., and recommended the children be placed with the grandparents for adoption.

By letter to counsel for E.D. and H.D. dated February 15, 2001, DYFS stated that counsel would be contacted concerning a Regional Dispositional Review of the Metropolitan Adoption Resource Center's decision not to approve them as adoptive parents

for their grandchildren and, when completed, "[they] will be notified accordingly of the Regional Administrator's decision." By letter to the grandparents' counsel dated March 9, 2001, DYFS provided its case notes related to the grandparents' involvement with the children, in anticipation of "the Regional Dispositional Review Conference."

During this period, the child placement review board continued to review the placement status of the children and the modification in the DYFS permanency placement plan pursuant to the Act. A child placement review order was executed on March 21, 2001, expressing dissatisfaction with the permanency planning decision of DYFS in rejecting the grandparents' application for custody and placement for adoption, and a "summary hearing for a review of permanency plan issues" was scheduled by the court for May 21, 2001.

The judgment of guardianship was not executed until April 16, 2001. It briefly recited the procedural history, stating, *inter alia,* that "the Court having found that it has no jurisdiction to decide in which home the children should be placed for purposes of adoption" and noting that "the Division having stated that the grandparents have administrative remedies that they may pursue[.]" The judgment stated that the court found by clear and convincing evidence that termination of the parental rights of M.A.B. and J.E.B. is in the best interests of the children, and placed both children in the guardianship of DYFS for all purposes, "including the placement of said [children] for adoption pursuant to *N.J.S.A.* 30:4C–15 through *N.J.S.A.* 30:4C–22[.]"

The judgment also specifically:

ORDERED that the Division shall notify the Law Guardian and [E.D. and H.D.], as well as their counsel . . of all Child Placement Review Board proceedings, all Division proceedings or actions, and all applications or proceedings related to the adoption of [E.M.B. and J.B.]; and it is further

ORDERED that the Division continue to give its full cooperation to and facilitate the visitation of [E.M.B. and J.B.] with their grandparents . . . during the period that the Division maintains guardianship of the children; and it is further

ORDERED that the Division shall provide the [grandparents] with an appropriate avenue of administrative relief by which they can seek review of the Division's plan for adoption of [E.M.B. and J.B.] by their foster parents and a ruling allowing the [grandparents] instead to adopt the children.

By letter to counsel for E.D. and H.D. dated April 27, 2001, DYFS advised that the grandparents' request for a hearing in the Office of Administrative Law (OAL) before an administrative law judge (ALJ) to challenge DYFS's decision, was denied. DYFS advised counsel that pursuant to *N.J.A.C.* 10:120A–3.1(a)3, the grandparents were not entitled to an OAL hearing but would be afforded a dispositional conference. The letter also stated that E.D. and H.D. may arrange for a record of the dispositional conference to be made and although testimony may be presented, "[t]here will be no cross-examination of witnesses."

In accordance with the March 21, 2001 child placement review order, the Family Part conducted a summary hearing on May 21, 2001 under the child placement review board docket numbers, FC–12–16–99 and FC–12–65–99. DYFS argued that the Family Part and child placement review board had no jurisdiction to review the placement plan; that an administrative appeal by the grandparents from the DYFS foster parent adoption plan was being processed and constituted adequate review of its placement decision; .and that the grandparents' ultimate remedy would be an appeal to this court from any adverse administrative decision.

In considering the matter, the trial court expressed concern that the administrative hearing being provided to E.D. and H.D. was before a hearing officer employed by DYFS, stating "somehow that just doesn't seem to give due process a fair shake[.]" After considering the arguments, the judge concluded:

Here's my decision. My decision is that the Division shall do exactly what the CPR board wants them to do, come up with a new plan. They've rejected the old one. Their next meeting I do believe is June the 20th, . . . and present that and see what the board says. The board's gotta serve some purpose, it's not there for window dressing. They didn't like what you did the first time, do it again. They will either accept it or reject it. . . .

. . . .

> Do what the board asks. Is that so hard? And if you're not gonna do what the board wants, then let's tell all these volunteers to go home and not bother volunteering [their] time and making like they're just doing something and the Division can just go ahead willy-nilly and do whatever it wants.

An order memorializing the judge's decision was executed on May 25, 2001, directing that DYFS

> shall create and submit to the Board a new placement plan for [E.M.B.] and [J.B.] in accordance with the March 21, 2001 Permanency Order, which states that (a) the Child Placement Review Board disagrees with the Division's goal of adoption of the children by their foster parents and (b) the goal of the plan instead should be the adoption of the children by their grandparents, [E.D. and H.D.]

By letter dated June 4, 2001, counsel for E.D. and H.D. advised the administrative hearing officer that the May 25, 2001 order of the Family Part might make the administrative appeal moot, and asked that it be held in abeyance.

In response to the May 25, 2001 order, DYFS submitted an addendum of its case plan to the child placement review board that recited the basis for its permanent placement plan of foster parent adoption "and continued increased visitation between the children and grandparents[.]"

At its June 20, 2001 meeting, the child placement review board rejected the addendum plan submitted by DYFS and continued to recommend that the permanency placement plan provide for adoption by the grandparents. The board also recommended a summary hearing be held before the court as soon as possible.

Meanwhile, DYFS moved for reconsideration of the May 25, 2001 order. E.D. and H.D. filed a cross-motion, seeking enforcement of the May 25, 2001 order. A hearing was held on these motions in the Family Part on July 30, 2001. The judge denied DYFS's motion for reconsideration and entered an order directing that "a special interests hearing requested by the CPR Board" be held on October 1, 2001. The application of DYFS for a stay was denied.

On September 10, 2001, we granted the application of DYFS for leave to appeal, stayed further proceedings in the Family Part pending disposition of the matter, and accelerated the appeal.

On appeal, DYFS presents the following arguments for our consideration:

*POINT I*

UPON THE ENTRY OF AN ORDER TERMINATING PARENTAL RIGHTS, BOTH THE FAMILY COURT AND THE CHILD PLACEMENT REVIEW BOARD LACK JURISDICTION TO REVIEW AND OVERTURN THE DECISION BY THE NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES TO APPROVE THE ADOPTION OF THE MINORS IN THE GUARDIANSHIP OF THE DIVISION BY THEIR FOSTER PARENTS.

*POINT II*

A CHALLENGE BY THE PARENTS OF THE MOTHER WHOSE PARENTAL RIGHTS TO HER CHILDREN HAVE BEEN TERMINATED TO THE DETERMINATION BY THE NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, THE GUARDIANS OF THE MINORS, TO APPROVE THEIR ADOPTION BY THEIR FOSTER PARENTS MUST PROCEED BEFORE THE DIVISION PURSUANT TO *N.J.A.C.* 10:120A–3.1(a)(3) WITH FINAL REVIEW BY THIS COURT PURSUANT TO *R.* 2:2–3(a)(2).

The Child Placement Review Act was enacted "to establish procedures for both administrative and judicial review of each child's placement in order to ensure that such placement ensures the safety and health and serves the best interest of the child." *N.J.S.A.* 30:4C–51.

Under the Act, DYFS is required to file a notice of placement with the Family Part within five days after placement of a child outside the home and "[s]uch filing shall establish a continuing jurisdiction of the court over the placement of the child." *N.J.S.A.* 30:4C–53. However, that section goes on to state:

The division shall also file immediate notice with the court of any change in placement and of *the permanent placement* or return home of the child. The *court's jurisdiction shall cease upon receipt of such notification* of the return home or alternative placement of the child[.]

[ (Emphasis added).]

■ Whether the termination of parental rights of the birth parents and placement of the children in the guardianship of DYFS for all purposes, including adoption, constitutes a "permanent placement" that would divest the court of child placement review jurisdiction was addressed in *State in re T.G.*, 173 *N.J.Super.* 146, 413 *A.*2d 645 (J. & D.R. Ct.1980). In *T.G.*, the court considered "the extent of the jurisdiction of the court and the

[child placement review] boards designated by the [Child Placement Review Act] after [DYFS] has been given guardianship of a child." *Id.* at 147, 413 *A*.2d 645.

In *T.G.*, as here, DYFS contended "that once guardianship is entered pursuant to *N.J.S.A.* 30:4C–15, the jurisdiction of the court ceases. Its position is that the granting of guardianship is equivalent to permanent placement of the child." *Ibid.* The court recognized that "if the grant of guardianship is the equivalent of permanent placement, the court's jurisdiction ends upon that grant." *Ibid.* The court outlined the contentions of DYFS, as follows:

The Attorney General also cites *N.J.S.A.* 30:4C–21 in support of his contention that a guardianship order ends the court's jurisdiction. According to this section, an order of commitment should not be restrictive of DYFS' exclusive guardianship.

The Attorney General further argues that since the review boards are only to be used as an arm of the court, *N.J.S.A.* 30:4C–57, their jurisdiction cannot exceed that of the court. Therefore, when the court grants DYFS guardianship, both the review board and the court lack jurisdiction to review any future placements that DYFS might make.

[*Id.* at 147–48, 413 *A*.2d 645.]

In rejecting the arguments of DYFS, the court stated, in pertinent part:

The [Child Placement Review Act] clearly indicates that the court does *not* lose its jurisdiction when it grants guardianship to DYFS. This continuing jurisdiction is retained by the court whether the guardianship order is made pursuant to a voluntary agreement or after parental rights are terminated. The act gave the [Family Part] the authority to review placements made by DYFS. According to the terms of the act, *N.J.S.A.* 30:4C–52(b), a child placed outside the home "means a child under the care, custody or *guardianship* of the division." (Emphasis supplied). The entire act speaks to the procedure for reviewing the placements of children by DYFS. To adopt the definition of guardianship propounded by the Attorney General would weaken the reviewing powers of the court substantially. It was not the intent of the legislators to reduce the power of the court. According to the legislative declarations in the act, *N.J.S.A.* 30:4C–51, the clear intent of the law is to provide periodic review of each child in placement in order to establish either an alternative permanent home or to return him to his home.

Pursuant to *N.J.S.A.* 30:4C–55, DYFS is required to submit a plan for the eventual return home or permanent placement of each child placed outside the home. The submission of such a plan would be pointless if the court did not retain jurisdiction to review the placement. The fact that a child under the guardianship of DYFS, *i.e.*, placed outside of his home, must have a plan submitted on his behalf

for eventual permanent placement clearly indicates that guardianship is not the equivalent of permanent placement.

The Attorney General's reliance on *N.J.S.A.* 30:4C–21 as an indication of the court's lack of jurisdiction in guardianship cases is misplaced.

This section does indeed say that the control of DYFS over a child under its guardianship is to be unrestricted. However, it also provides that DYFS may be removed as a guardian upon a showing of good cause by a court of competent jurisdiction. Therefore, although DYFS has complete control over the child the statute still allows a court to review the division's actions upon charges preferred.

....

This court is also convinced that it has jurisdiction to review placements made by DYFS of children under their guardianship.

Until a child has actually been adopted no permanency can be attributed to the situation....

....

A child under the guardianship of DYFS cannot be said to be in an immutable position. There is no permanency in the situation. The possibility of a change in the child's placement always exists. Therefore until the child has been adopted the court retains its jurisdiction and power to review.

[*T.G.,* supra, 173 *N.J.Super.* at 148–50, 413 *A.*2d 645 (other citations omitted).]

■ The procedures for review of the out-of-home placement by DYFS are clearly outlined in the Act. Once a child is placed in foster care, *N.J.S.A.* 30:4C–55 requires DYFS to prepare and revise, when necessary, a placement plan that, *inter alia,* contains "[a] statement of the goal for the permanent placement ... of the child[.]" Upon the submission of the placement plan, the child placement review board shall "act on behalf of the Family Part ... in reviewing the case of each child placed outside his home by the division in accordance with a court order[.]" *N.J.S.A.* 30:4C–58. All reviews by the child placement review board

shall include, but not necessarily be limited to, the consideration and evaluation of such matters as:

a. The appropriateness of the goal and objectives of the placement plan and anticipated date that the goal will be achieved;

....

j. The appropriateness of the division's permanency plan and the division's reasonable efforts to achieve that plan[.] ...

[*N.J.S.A.* 30:4C–58.]

The Act provides that after the child placement review board has completed its review, it shall submit a written report to the

Family Part and DYFS. The report shall offer one of the following findings, stating the specific reasons therefor:

a. That continued placement of the child outside the home is not in the child's best interest and the child should be returned home within two weeks and that the division ... shall provide reasonable and available services which are necessary to implement the return home;

b. That continued placement outside of the home is in the child's best interest on a temporary basis until the long-term goal is achieved, which long-term goal is:

(1) Return to the child's parents or legal guardian,

(2) Adoption,

(3) Permanent placement with a relative,

(4) Long-term foster care custody,

(5) Independent living,

(6) Institutionalization, or

(7) An alternative permanent placement; [or]

c. That continued placement outside the home on a temporary basis is in the child's best interest, but that there is not sufficient information for the board to make a recommendation, therefore, the board requests the court to order the division ... to provide the needed information within two weeks of the court order.

[*N.J.S.A.* 30:4C–60.]

*N.J.S.A.* 30:4C–60 also requires the child placement review board to state in its report whether DYFS's placement plan satisfies the criteria set forth in *N.J.S.A.* 30:4C–58.

Upon review of the board's report, the Family Part is required to issue an order "which it deems will best serve the health, safety and interests of the child[ren]." *N.J.S.A.* 30:4C–61a. If the placement plan does not satisfy the criteria set forth in *N.J.S.A.* 30:4C–58, "the court shall order that the placement plan be modified or that a new plan be developed within 30 days." *Ibid.*

In reviewing the report of the child placement review board, the Family Part may schedule a summary hearing if, *inter alia:*

(1) The court has before it conflicting statements of material fact which it cannot resolve without a hearing; or

. . . .

(3) The court concludes that the interests of justice require that a hearing be held; or

. . . .

(6) If the review is to serve as a permanency hearing.

[*N.J.S.A.* 30:4C–61b.]

The Act also contemplates review and approval of the permanent placement plan by the Family Part. *N.J.S.A.* 30:4C–61.2.

DYFS argues that *N.J.S.A.* 30:4C–58.1,[3] enacted subsequent to the court's decision in *T.G.*, limits the role of the child placement review board subsequent to the entry of a judgment terminating the parental rights of the birth parents once DYFS notifies the Family Part that the child has been placed in a home for purposes of adoption. *N.J.S.A.* 30:4C–58.1 provides, as follows:

When a child is placed in a home for the purpose of adoption, the division shall notify the family part of the Chancery Division of the Superior Court in the child's county of supervision in writing of the placement. Upon receipt of the notice, the board shall not schedule further reviews of the case unless:

a. The child is removed from the adoptive home;

b. The complaint for adoption was not filed within eight months of the placement and the filing of the complaint is not imminent; or

c. The plan for the child was modified so that immediate adoption by the stated adoptive parents no longer is the goal.

The division shall send the court and the board a status report on the case every four months. When a complaint for adoption has been filed, the division shall inform the court and no further board reviews shall be held while that action is pending.

When a judgment of adoption has been entered the court shall dismiss the complaint pursuant to [*N.J.S.A.* 30:4C–53].

If a child is placed in an adoptive home prior to the completion of the initial court review, the court shall retain jurisdiction to complete the review.

DYFS contends that since none of the three post-termination circumstances outlined in *N.J.S.A.* 30:4C–58.1a–c exists, the child placement review board and the Family Part lack jurisdiction to review the placement. We disagree.

Prior to the termination of the parental rights of M.A.B. and J.E.B. the "plan for the child[ren] was modified so that immediate adoption by the stated adoptive parents" as set forth in the court-approved permanency plan, *i.e.*, the grandparents, was "no longer the goal." *N.J.S.A.* 30:4C–58.1c. Additionally, pursuant to the last paragraph of *N.J.S.A.* 30:4C–58.1, the Family Part retains juris-

---

[3] Enacted by *L.* 1982, *c.* 24, § 10, *eff.* April 27, 1982.

diction to complete the placement review where the child is placed in an adoptive home prior to completion of the initial court review.

Here, the circumstances do not warrant the application of *N.J.S.A.* 30:4C–58.1 to preclude exercise of placement review. In its May 31, 2000 order, the Family Part accepted and approved the DYFS permanency placement plan that provided for adoption of E.M.B. and J.B. by E.D. and H.D. DYFS's change of the goal of its permanency plan from grandparent adoption to foster parent adoption essentially coincided with the entry of default against M.A.B. and J.E.B. at the October 16, 2000 hearing. It was clear by the October 5, 2000 order that E.D. and H.D. were contesting the conclusions of Dr. Goldblatt, upon which DYFS apparently based its change in the permanency plan, and had retained Dr. Goodman, their own expert, to conduct a bonding evaluation. Under these circumstances, the child placement review board and the court were unable to effectively review the change in the permanency plan until completion of the bonding evaluation by Dr. Goodman.

The March 21, 2001 child placement review board order memorialized the board's dissatisfaction with the permanency planning decision of DYFS and a summary review hearing was scheduled before the court for May 21, 2001.

We conclude that the execution of judgment of guardianship on April 16, 2001 did not divest the child placement review board or the Family Part of their jurisdiction under the Act to determine whether the bests interests of E.M.B. and J.B. were being served by the change in the permanency placement plan that provided for adoption by the foster parents, since the court review of that modification in the permanency plan was not yet completed.

Although E.D. and H.D. did not formally intervene in the guardianship action, the procedural history of both the Title 9 child abuse and neglect action and the Title 30 guardianship case illustrate there was an ongoing dispute between the grandparents and the foster parents as to whether the goal of the DYFS permanency plan should be foster parent or grandparent adoption.

The record does not contain a copy of the October 16, 2000 transcript. From the record provided, we conclude the court was initially satisfied with the sufficiency of the administrative remedy being afforded to the grandparents by DYFS to challenge its decision on the permanency plan. Once the Family Part judge became aware of the specifics of that proposed administrative challenge, the judge concluded it was insufficient.

However, we conclude that the statutory scheme for review of a permanent placement plan by the child placement review board and the Family Part, as provided in the Act, cannot be transmogrified into an administrative agency review process, effectuated through a change in the permanency planning goal by DYFS that essentially coincided with the decision to terminate the parental rights of the birth parents in the guardianship case. Moreover, the Act contemplates an independent judicial review of DYFS's permanency placement plan, separate and apart from any rights the grandparents may possess to contest the internal administrative decision of DYFS.

We are in general agreement with the court's analysis in *T.G.* that when interpreting *N.J.S.A.* 30:4C–53, the phrase "permanent placement" is not synonymous with the phrase "termination of parental rights." However, we also recognize that *N.J.S.A.* 30:4C–58.1 deprives the Family Part and child placement review board of jurisdiction to review placement decisions by DYFS once the initial court review of that placement decision has been completed unless the child is removed from the adoptive home; the complaint for adoption was not filed within eight months of the placement and the filing of the complaint is not imminent; or the plan for the child was modified so that immediate adoption by the stated adoptive parents no longer is the goal. *N.J.S.A.* 30:4C–58.1a–c.

Our review of other reported decision supports these conclusions. In *In re C.W., M.W. & N.F. Guardianship,* 183 *N.J.Super.* 47, 53, 443 *A.*2d 231 (App.Div.1982), we ruled that courts continue to have jurisdiction over the placement of children "notwithstand-

ing the fact that it committed them to the guardianship of DYFS[,]" "[s]ince the court must determine whether the permanent placement plan submitted by DYFS is in the best interests of each of these children[,]" pursuant to *N.J.S.A.* 30:4C–61.

These conclusions, however, must be distinguished from the issue of the authority of the court to internally review placement decisions made by DYFS for children in its custody. In *State in Interest of J.B.*, 293 *N.J.Super.* 485, 681 *A*.2d 668 (Ch.Div.1996), Judge Clarkson S. Fisher, Jr. held that the issue of whether a child should be removed from one set of foster parents and placed with another is to be resolved through an administrative appeals process, and not through a summary child placement review board hearing. *Id.* at 490, 681 *A*.2d 668. However, the issue before Judge Fisher did not involve a permanent placement planning review issue under the Act. Here, the issue for resolution is the ultimate permanency issue—among those bonded to the children, who should be permitted to adopt? That issue is for the Family Part to determine through application of the procedures set forth in the Act for review of the permanency placement plan.

In *Matter of Guardianship of S.C.*, 246 *N.J.Super.* 414, 428, 587 *A*.2d 1299 (App.Div.), *certif. denied*, 126 *N.J.* 334, 598 *A*.2d 891 (1991), when faced with a request for visitation by a natural mother whose parental rights had been terminated as to her child, we stated that "[o]nce parental rights are terminated and the child is placed under the guardianship of the Division, an alternative permanent placement is made and the court's jurisdiction ends." However, in *S.C.* the issue was the jurisdiction of the court to order post-termination visitation, not review of a DYFS permanency placement plan. We elaborated, as follows:

> The clear language of the applicable statutes precludes the granting of post-termination visitation. It may well be that in certain situations, post-termination visitation would be in the best interests of older children who developed a demonstrable bond with their natural parents, but that is not so in this case.
> [*Ibid.*]

More recently, in *S.R. v. Div. of Youth & Family Servs.*, 311 *N.J.Super.* 431, 710 *A*.2d 542 (App.Div.), *certif. denied*, 157 *N.J.*

542, 724 *A*.2d 802 (1998), we affirmed an order of the Family Part dismissing a grandmother's complaint for custody filed subsequent to a judgment terminating the parental rights of the birth parents. Prior to the termination of parental rights trial, the grandmother was given the option of requesting judicial review of DYFS's permanency planning decision to seek foster parent adoption through application of the child placement review process. *Id.* at 433, 710 *A*.2d 542. The grandmother elected not to go forward with the child placement review, indicating she would instead take steps to intervene in the pending guardianship proceeding. However, the grandmother failed to intervene in the termination proceedings. *Id.* at 434–35, 710 *A*.2d 542. The guardianship matter was tried and the court entered a judgment terminating the parental rights of the birth parents based upon the testimony and evidence received at trial, and granted DYFS guardianship of the children for all purposes, including the placement for adoption. *Id.* at 435, 710 *A*.2d 542. Approximately five months later, the grandmother filed a complaint against DYFS seeking custody. *Ibid.* Under those circumstances, we concluded that "[n]either the trial court nor we have, to date, been given any reason to apprehend that the children's best interests are not well served by the guardianship order and DYFS's permanency plan." *Id.* at 437, 710 *A*.2d 542.

In *S.R.*, there was no issue placed before the child placement review board prior to entry of the judgment of guardianship as to whether the best interests of the children were being served by the permanency placement plan advanced by DYFS.

Although it is true that the termination of parental rights effectively terminates the legal relationship between the parents and the child, it cannot be said to also divest the pre-adoption jurisdiction of the court over a permanency plan that has not been reviewed pursuant to the provisions of the Child Placement Review Act. Indeed, the language of *N.J.S.A.* 30:4C–58.1 clearly recognizes and defines the jurisdiction of the Family Part and applicability of the Act in a post-termination setting.

We also note there are inherent difficulties with the provisions of the DYFS addendum to the permanency placement plan that further emphasize the importance of judicial review. There is no dispute that the children have bonded with both the foster parents and with the grandparents. At issue is the degree of those bonds and their import and impact on the permanency placement plan. The June 20, 2001 DYFS addendum to its case plan for E.M.B. and J.B. provides for foster parent adoption with "continued increased visitation between the children and the grandparents[.]" That aspect of DYFS's permanency plan is unenforceable. In *In re Guardianship of K.H.O.*, 161 *N.J.* 337, 362, 736 *A.*2d 1246 (1999), our Supreme Court stated that open adoption agreements that allow adoption, but permit contact by the children with biological relatives "cannot be judicially enforced, given the potential for disruption of the child's family life under such arrangements and the fact that under the adoption laws the adoptive parents' rights are paramount."

Additionally, in *In re Adoption of Child by W.P.*, 163 *N.J.* 158, 163, 748 *A.*2d 515 (2000), the Court held that following the termination of parental rights through adoption, grandparents have no right to seek visitation. Essentially, the Court held that the rights of grandparents are derivative and are extinguished upon the termination of the parental rights of the natural parents.

We also concur with the conclusion of the Family Part judge that the administrative review process offered by DYFS is not the type of plenary review desirable for resolution of the fundamental issue of whether a permanency placement plan effectuates the best interest of children. The position of DYFS is essentially that the timing of the entry of the judgment of termination dictates the authority for judicial review notwithstanding the child placement review process required by the Act. That position is untenable. The suggestion that the procedural turn of events in this case must lead to a result where one permanency placement plan is subject to judicial review and approval, but an amendment to that judicially-approved permanency placement plan is only subject to

administrative agency review, flies in the face of the stated purposes of the Act that requires judicial review of the placement of children "to ensure that such placement ensures the safety and health and serves the best interest of the child[ren]." *N.J.S.A.* 30:4C–51.

We do not suggest that the shift in the goal of the permanency placement plan by DYFS was unwarranted or that it does not serve the best interests of these children. That issue will be resolved in the review hearing conducted in the Family Part. We also emphasize to the Family Part that it should not afford any presumption of correctness to the permanency placement plan recommendations made by the child placement review board, nor to the DYFS permanency placement plan. DYFS has performed its statutory function of preparing and submitting for review a permanency placement plan it contends serves the best interests of the children. *See N.J.S.A.* 30:4C–55. The child placement review board has performed its statutory review function of that plan and has made certain recommendations. *See N.J.S.A.* 30:4C–58 to–60. The function of the Family Part is to receive testimony, evidence and information from all relevant sources pertaining to the best interests of the children and determine a permanency placement plan that "ensures the safety and health and serves the best interest of the child[ren]." *N.J.S.A.* 30:4C–51; *see also N.J.S.A.* 30:4C–61.

Affirmed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.