155 N.J. Super. 555 (1978)
383 A.2d 125
W.C. AND B.M., PLAINTIFFS-RESPONDENTS,
v.
P.M. AND N.J. DIVISION OF YOUTH AND FAMILY SERVICES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 4, 1978.
Decided January 23, 1978.
*558 Before Judges HALPERN, LARNER and KING.
*559 Ms. Lorraine S. Gerson, Deputy Attorney General, argued the cause for defendant-appellant N.J. Division of Youth and Family Services (Mr. William F. Hyland, Attorney General, attorney; Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
Mr. Sydney Lane, Essex-Newark Legal Services, argued the cause for defendant-appellant P.M.
Mr. James M. Cawley, Jr. argued the cause for plaintiffs-respondents (Spagnoli and Thuring, attorneys).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal involves an attack upon the decision of the New Jersey Division of Youth and Family Services (Division) to return two minor children, 8 and 11 years of age, from foster parents to their natural mother. The factual and procedural history preceding the hearing of the appeal is material to its disposition.
After a referral and subsequent investigation by the Division the appellant P.M. in June 1974 executed a voluntary placement agreement requesting the Division to place three of her children in foster care because of her inability to care for them adequately and properly. Two other children were retained in her care. One of the three children released to the Division was placed in a foster home and returned to his mother in June 1975. The other two, G. and P., were placed in foster care with the plaintiffs on June 12, 1974 and have remained in their home to this date. This placement was made pursuant to the approval by the Division of plaintiffs as foster parents and their execution of a form of agreement which, among other undertakings, acknowledges the temporary character of the placement.
Plaintiffs fully performed their duties and obligations and provided excellent care and nurture to both children and expressed to the assigned social worker of the Division their interest in adopting them. In May 1977 plaintiffs were advised *560 that the Division would not support any application for adoption and that further inquiry would be made of the mothers as to her plans for the return of her children. This inquiry elicited the decision in May 1977 by the mother that she would not surrender custody of the children for adoption and would be prepared for their return in about six months.
On October 20, 1977 the mother advised the social worker that she had obtained a home in Bradley Beach which would be adequate to house all her children and requested the return of the two children in plaintiffs' foster care on November 1, 1977. However, at the suggestion of the Division the date of return was postponed to the latter part of November so that arrangements could be made for the smooth transfer of the children from the adoptive home to that of their mother.
On October 31, 1977, the Division notified plaintiffs that the children would be returned to their mother on November 29, to which plaintiffs objected strenuously.
The record also reveals that the mother of these children has maintained contact with and interest in them throughout the period of foster care by many visits and communications, all of which were with the cooperation and consent of the foster parents. Apparently, the children have been fully cognizant of their relationship to their natural mother and their siblings residing wth her.
The determination of the Division to accede to the mother's request for the return of the children was based upon the mother's change of circumstances and the agency's conclusion that she is now capable of caring for them and has an adequate home to house them. In addition, the Division arranged for a psychological evaluation to determine whether there would be any emotional harm to the boys if removed from their foster placement. The expert's report concluded "that there is nothing substantial enough to warrant a negative statement regarding a move of the children to a permanent adoptive home." (He did not realize that the proposed move was to the natural mother.)
*561 The final report of the caseworker and his supervisor to the Division included the following findings with respect to the mother:
Mrs. P.M. has developed into a very effective mother. She has improved in both self-deportment and insight since she has been supervised by this agency. From the first contact with the client, her main stated purpose was to regain her children in placement and to establish herself as the responsible figure in her family. To accomplish this she has been zealous in obtaining suitable housing, providing structure for her family and being open to any and all suggestions raised to enhance the family setting. She is a strong willed individual who has now channeled her efforts in very positive ways. When the apartment she obtained in Harrison, New Jersey, was thought too small to house herself and all of her children, she found a new one and was very resourceful in accomplishing her move to the new apartment by herself. She has been very effective with money-management and has been able to live in relative comfort on a public assistance grant. Ms. M. has the respect of her children even those in placement when home for a visit refer readily to her for guidance and direction.
Accordingly, the Division decided to remove the children from their foster home and reunite them with their mother. When the representative of the Division sought to regain custody of the children for this purpose on November 29, 1977 plaintiffs denied access to them and refused to divulge their whereabouts. The Division immediately filed a complaint in the Juvenile and Domestic Relations Court seeking an order to compel plaintiffs to relinquish physical custody. An order issued on December 1 directing plaintiffs to produce the children before the court on December 2 and to show cause why they should not return the children to their natural mother.
On December 1, while the Division was applying for relief in the Juvenile and Domestic Relations Court, the foster parents filed a complaint in the Matrimonial Division of the Chancery Court seeking among other relief to restrain the Division from removing the children from their custody, *562 awarding custody to them and permitting them to adopt the children.
On the return date of the order to show cause the Chancery Division judge denied Division's motion to dismiss the complaint and to vacate the restraints contained in the order to show cause, assumed jurisdiction, continued the custody of the children in the plaintiffs, appointed a guardian ad litem, and ordered an investigation and report by the Probation Department and evaluation of the children by a psychologist and psychiatrist. He also directed that a hearing be held at some future date to be set by the court.
The Division moved before this court for leave to appeal from that order. We granted such leave, continuing temporary custody in plaintiffs and expedlted the appeal which was heard on briefs and oral argument on an accelerated basis pursuant to R. 2:11-2.
At the outset we deem it appropriate to note that the Division is the state agency vested with broad administrative powers to provide for the care and custody of children in a manner "that the children may, so far as practicable, continue to live in their own homes and family life be thereby preserved and strengthened." N.J.S.A. 30:4C-3(a). Its powers include the general supervision over children whose welfare requires placement in a foster home for temporary or long-term care. N.J.S.A. 30:4C-26 and 26.1.
A foster parent who is entrusted with such child care is defined as one with whom a child is placed for such temporary or long-term care, but not including persons with whom a child is placed for adoption. N.J.S.A. 30:4C-26.4.
By virtue of the statutory pattern and the agreements executed by the mother and foster parents it is abundantly clear that the children were in the foster home on a temporary basis subject to return to the natural mother. Underlying this expectation of both parties was the discretionary authority of the Division in its administrative capacity to remove the children from the foster home whenever it was *563 deemed appropriate to reunite them with their natural mother.
Such an administrative decision by the Division is not subject to review by the Chancery Division, and there does not appear to be any other valid basis for the exercise of jurisdiction by that court in the limited area of the Division's conclusion in this case. Appeal of the administrative determination is exclusively to the Appellate Division of the Superior Court. R. 2:2-3(a)(2); Pascucci v. Vagott, 71 N.J. 40, 52 (1976). The trial court therefore had no jurisdiction to entertain the complaint or to issue any orders pursuant thereto.
Reliance by plaintiffs and the trial court on N.J.S.A. 9:2-9 is misplaced. That statute authorizes an action in the Superior or Juvenile and Domestic Relations Court when a child is in the actual care or custody of a person who is guilty of neglect or other types of conduct endangering his welfare or likely to cause him to become a public charge. It was never intended to apply to the facts herein where the children are in the temporary custody of the foster parents subject to the control of the Division pursuant to other applicable statutes and the foster care agreement. The effort of plaintiffs to invoke this statute upon allegations of past deficiencies of the mother as a basis for restraining the removal of the children is without legal warrant. The children are not in the actual care and custody of the mother currently and there can be no claim of current neglect to support the action contemplated by N.J.S.A. 9:2-9.
N.J.S.A. 30:4C-15 is equally inapplicable as a basis for jurisdiction under the facts herein.
Plaintiffs also urge that they are entitled as a matter of law to a plenary hearing before the Division is permitted to remove the children from their custody. This contention is fallacious for two reasons. The administrative decision herein is purely administrative and does not constitute a quasi-judicial determination, and the plaintiffs have no standing or protected interest in their capacity as foster *564 parents to insist upon a plenary hearing as a precondition of the decision of the Division. See Smith v. Organization of Foster Families, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977).
Plaintiffs accepted the children with full knowledge that the placement was for the purpose of providing a foster home and not for adoption. As such, their reasonable expectation was that the relationship with the children would have to terminate at some time unless the mother voluntarily relinquished custody and parental rights. Since the mother wishes the return of her children and the Division finds that they should be reunited, plaintiffs have no basis for complaint. Plaintiffs were afforded the opportunity of presenting their views to the Division on several occasions. This input by them suffices under their limited and temporary status vis-a-vis the children.
We therefore hold that under the applicable statutes and the agreements herein the Division is not legally compelled to afford foster parents a plenary hearing before returning children to their natural parents. This does not, however, foreclose the Division from providing such a plenary hearing as a matter of discretionary administrative policy.
Although this appeal could be resolved on the basis of lack of jurisdiction of the trial court, nevertheless we prefer to rest our determination on the merits since the issue posed is novel, on the assumption that the matter is properly before us as the court having jurisdiction to review the Division's determination. On that assumption, we find that the discretionary determination by the Division is amply supported by the extensive record available to the Division as a basis for decision. Bearing in mind the underlying policy of the applicable legislation to preserve family life and to reunite children with their natural parents wherever possible, the action of the Division is clearly justified.
We are mindful of the evidence that the children have had and will have better and greater economic opportunity for development and education with the foster parents. *565 Nevertheless, in the context of the issue in this case the "best interests" of the children are not determinative. Whether the foster home is a "better" home or plaintiffs are "better" parents does not control. See Doe v. G.D., 146 N.J. Super. 419, 431 (App. Div. 1976); In re Cope, 106 N.J. Super. 336, 340 (App. Div. 1969). The only question is whether the administrative decision to remove the children from their foster home environment and to restore the permanent relationship with their parent is reasonably warranted by the facts contained in the total investigative and social record. We have no doubt that it is.
As observed by Justice Stewart in a concurring opinion in Smith v. Organization of Foster Families, supra:
But under New York's foster care laws, any case where the foster parents had assumed the emotional role of the child's natural parents would represent not a triumph of the system, to be constitutionally safeguarded from state intrusion, but a failure. The goal of foster care, at least in New York, is not to provide a permanent substitute for the natural or adoptive home, but to prepare the child for his return to his real parents or placement in a permanent adoptive home by giving him temporary shelter in a family setting. [431 U.S. at 861, 97 S.Ct. at 2119, 53 L.Ed.2d at 46]
Similarly in New Jersey the legislative policy emphasizes the temporary characteristic of foster care, and the ideal goal of the return of foster care children to their natural parents would be subverted if the right of retention in the foster home was dependent upon the question of the best interests of the children. Foster care is designed as a temporary palliative to care for children whose parents are unable to do so for one or more reasons; and in many cases, as herein, it comes about as a result of voluntary consent by the parent. To surround a foster parent with greater rights than those contemplated by the legislative system would permit them to interfere with the delegated function of the Division and the paramount right of the parent to the reentry of the children into the natural family unit. In fact, such indulgence toward foster parents would tend to destroy the entire system of foster care by creating an impediment *566 to the voluntary consent of an unfortunate parent who cannot care for the children because of health, economic reasons or other infirmities, but who nevertheless has a sincere interest in the welfare of her children and their ultimate return to the family fold. Such an approach would also obliterate the well-settled dichotomy in the legislative system of our State between the placement of a child for adoption and the placement for foster care. See N.J.S.A. 30:4C-26.4. In the former the parties know and expect the termination of parental rights. In the latter the parties know and expect temporary placement looking toward return of the children to the natural parent.
We have considered the several cases cited by plaintiffs in support of their contention that the best interests of the children should be the applicable standard in determining whether the children may be removed from their foster home. All these cases involve action between the Division and parents under other statutes which have as their purpose the termination of parental rights because of neglect and abuse or the forsaking of parental obligations. Those statutes and the cited cases create no right of action in foster parents and have no application to the mere administrative decision involved herein.
In view of the foregoing, we reverse and set aside the order of the Chancery Division and affirm the determination of the Division of Youth and Family Services to remove the children from the foster home of plaintiffs and to reunite them with their mother. Plaintiffs are hereby ordered to deliver the children to the Division at such time, place and manner as the Division may determine and without hindrance or obstruction.
By way of implementation of our prior order herein and for the protection of the young children involved, we have deleted any reference in this opinion to the names of the parties. Except for the opinion itself, the Clerk shall impound all papers heretofore filed unless they may become necessary for release to counsel in connection with prosecution of a further appeal.