681 A.2d 668

THE STATE OF NEW JERSEY IN THE INTEREST
OF J.B., M.L. AND M.W., MINOR CHILDREN.

Superior Court of New Jersey
Chancery Division Family Part
Middlesex County

Decided July 23, 1996.[1]

*Maureen Vella,* for M.P. and S.P.

---

[1] This opinion supersedes the written opinion of July 2, 1996.

*Teri Appelson,* Deputy Attorney General, for Division of Youth and Family Services.

FISHER, J.S.C.

In this case, the Division of Youth and Family Services advised certain foster parents that three foster children would be removed from their home. The immediate question to be resolved concerns whether this court or the Appellate Division has jurisdiction over the dispute.

The facts reveal that J.B. (date of birth: February 25, 1987), M.L. (July 11, 1989) and M.W. (February 28, 1992) have been in foster care for many years. Their relationship with their natural parents was terminated long ago. They have since been in the care and custody of the Division of Youth and Family Services (DYFS). DYFS placed these children with M.P. and S.P. (the foster parents) in 1988, 1989 and 1992, respectively. They came to the home of the foster parents when they were 18 months old, 4 months old and 6 weeks old, respectively. The foster parents are, in essence, the only caretakers these children have known; DYFS concedes the children are bonded to the foster parents.

On June 16, 1995, DYFS advised the foster parents, by letter, of various concerns with their parenting of the children, and indicated that it could no longer approve their adoption of the children. They were directed to the Division Office Manager as the person they should contact if they disputed that decision.

On June 28, 1995 the foster parents met with the Office Manager and a local dispositional conference was held. On August 28, 1995 the Office Manager issued her written decision. That decision provided the specific reasons for the removal of the children. The foster parents were also advised that if they disagreed they could request further administrative review.

On November 3, 1995 a regional dispositional conference was held before an administrative hearing officer; the parties presented evidence in support of their respective positions.

On January 30, 1996 the foster parents were provided with the decision of the Administrative Review Officer which affirmed DYFS's determination to remove the children. The foster parents were advised that this was a final administrative determination appealable only to the Appellate Division unless they chose to exercise their right to further administrative review. They were further advised that if they elected not to exercise this option within ten days from January 30, 1996 the determination of the regional administrator would become a final agency decision.

The foster parents apparently never attempted to appeal that final agency decision. Nevertheless, Division Director Patricia Balasco–Barr reviewed the decision of the regional administrator and affirmed the removal of the children. On June 5, 1996, the foster parents were advised that the children would be removed and taken to their new foster homes at the conclusion of the school year on June 28, 1996.

Apparently, at the request of the foster parents, a child placement review hearing was somehow administratively scheduled and listed on this court's calendar for June 14, 1996. At that time DYFS contended that any further action in this case should be in the Appellate Division, relying upon *N.J.A.C.* 10:120–2.9. The foster parents argued that this court has jurisdiction because it is being asked to review the action of the Child Placement Review Board of April 14, 1996. *See, N.J.S.A.* 30:4C–58. To resolve this issue the court set up an expedited briefing schedule. The foster parent's brief, DYFS's response and the foster parent's reply were received and considered. The last of these was received on June 27, 1996. DYFS previously agreed to refrain from removing the children until July 2, 1996, but no longer.

The foster parents raise a number of issues, including (1) whether or to what extent they have standing to be heard in the past, present or any future legal action with respect to these

children,[2] (2) whether they have been afforded due process in connection with the legal proceedings to date, and (3) whether all administrative remedies have been exhausted. DYFS has also used this opportunity to express its views on the propriety of their decision to remove these children from the foster parents. While all these issues are certainly important, they are not presently before the court. The primary issue that must be decided is whether the merits of all these contentions should be resolved in this court or the Appellate Division.

The answer to that question can be obtained from a clear understanding of the scope of the Child Placement Review Act (the Act). The Act's declared policy is "to afford every child placed outside his [or her] home by [DYFS] with an opportunity for the eventual return to his [or her] home or placement in an alternative home." *N.J.S.A.* 30:4C–51. The Act establishes "procedures for both administrative and judicial review of each child's placement in order to ensure that such placement serves the best interest of the child." *Id.*

The Act requires the local child placement review board to review placement plans, *N.J.S.A.* 30:4C–58, and suggest to the Chancery Division one of three recommendations:

(a) continued placement of the child outside of the home is not in the child's best interest and the child should be returned home within two weeks;

(b) continued placement outside of the home is in the child's best interest on a temporary basis until one of six designated long-term goals is achieved;

(c) continued placement outside of the home on a temporary basis is in the child's best interest, but there is insufficient information for the board to make a determination.

[*N.J.S.A.* 30:4C–60.]

The Act requires the board to "give priority to the goal of return to the child's parents or legal guardian unless that goal is not in the best interest of the child" when submitting its proposed

---

[2] *See, e.g., State in Interest of L.L.,* 265 *N.J.Super.* 68, 625 A.2d 559 (App.Div. 1993); *In the Matter of A.,* 277 *N.J.Super.* 454, 649 A.2d 1310 (App.Div.1994); *D.Y.F.S. v. D.T.,* 171 *N.J.Super.* 520, 410 A.2d 79 (Cty.Ct.1979).

recommendation to the court. *Id.* In addition, the court is permitted only to enter an order which conforms to one of the three recommendations made by the board. *N.J.S.A.* 30:4C–61(a). The court may request further information. *N.J.S.A.* 30:4C–61(b). If there is a factual dispute, or a request by a party with standing, or in the interest of justice, the court may also order a summary hearing in order to determine which of the three options is appropriate. *Id.* Contemplation of the limited options that the court may choose, from the limited options the child placement review board may recommend, demonstrates that the Act is not the proper vehicle for a resolution of what specific foster home a child may or may not reside in.

DYFS is charged with the responsibility for the "care, custody, guardianship, maintenance and protection of children." *N.J.S.A.* 30:4C–2(a). That responsibility is "full and complete for all purposes" and vests in DYFS the "custody and control of both the person and property of children in its custody or care ... when the children are in foster homes." *N.J.S.A.* 30:4C–22. To fulfill its charge, DYFS is statutorily authorized to create and implement rules and regulations. *See, N.J.S.A.* 30:4C–26a; 30:4C–4(h). These regulations are designed to insure that all children requiring foster care are placed in safe homes with nurturing substitute families who can meet their individual needs. *See, N.J.A.C.* 10:122B–1.2.

These regulations also set forth the extent to which DYFS may exercise its discretion to remove a child from a foster home. *N.J.A.C.* 10:122E–1.1. This dovetails with DYFS's continuing obligation to monitor foster children in order to assure they are receiving the maximum benefit from the services provided. *N.J.S.A.* 30:4C–25. This includes also the duty to insure that foster parents are able to meet the needs of such children. In order to fulfill these obligations, DYFS possesses considerable discretion in the selection of foster care providers and in the process of placing children who are in need of protection in foster homes.

To vindicate these concerns, the Legislature created a system which insures the Chancery Division's periodic review of the placement of children. The Legislature also permitted DYFS to adopt its own regulations to govern more specific issues, among other things, the location of children once they are placed in foster homes. *See, e.g., N.J.A.C.* 10:122E–2.1 to 2.7 ("removing the child from the foster home"); 10:122E–3.1 to 3.12 ("closure of a foster home"). The resolution of disputes arising out of the regulations cited immediately above is also to occur in the manner prescribed by regulation. The provisions which discuss the adjudication of such disputes indicate that "all hearings pursuant to the section shall be conducted pursuant to the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 and 52:14F–1 *et seq.* and the Uniform Administrative Procedure Rules, *N.J.A.C.* 1:1–1." *N.J.A.C.* 10:120–2.1(b). And if that is not suggestive enough as to which court has jurisdiction over any further such litigation,[3] *N.J.A.C.* 10:120–2.9 states:

> The Director's decision shall be the final determination concerning the subject matter of the hearing. Any appeal of such decision shall be solely to the Appellate Division of the Superior Court within the limits allowed by New Jersey court rules.

Clearly, this journey through the Child Placement Review Act, and the regulations adopted with respect to foster care for children so placed, demonstrates that the central issue here—whether these particular children should be removed from these particular foster parents and placed with other foster parents—is a matter to be resolved finally by the Director and reviewed "solely" by the Appellate Division. *Accord, Doe v. State,* 165 *N.J.Super.* 392, 400, 398 *A.*2d 562 (App.Div.1979). Whether, as the foster parents argue, they have not previously been given adequate standing to

---

[3] The intent of *R.* 2:2–3(a)(2) is that "every proceeding to review the action or inaction of a state administrative agency would be by appeal to the Appellate Division." *Central R.R. v. Neeld,* 26 *N.J.* 172, 185, 139 *A.*2d 110 (1958), *cert. denied* 357 *U.S.* 928, 78 *S.Ct.* 1373, 2 *L.Ed.*2d 1371 (1958). The rule is viewed broadly in favor of review being in the Appellate Division. *See, e.g., Pascucci v. Vagott,* 71 *N.J.* 40, 362 *A.*2d 566 (1976); *Bishop v. N.J. Sports & Exposition Authority,* 168 *N.J.Super.* 533, 403 *A.*2d 934 (App.Div.1979).

be heard, or whether they have been provided with all the process which is due, or whether the matter has been resolved by a fair and impartial tribunal, are matters presumably redressable upon appeal to the Appellate Division. Whether a full hearing has not previously occurred and all administrative remedies have been exhausted or provided may yet also be considered by the Appellate Division. *See Doe, supra,* 165 *N.J.Super.* at 404–406, 409, 398 *A.2d* 562; *J.E. v. State,* 131 *N.J.* 552, 622 *A.2d* 227 (1993). The existence of these arguments does not in any way suggest that this court, rather than the Appellate Division, should resolve them. Such a position merely begs the question and runs contrary to the clear dictate of *N.J.A.C.* 10:120–2.9.

For these reasons, the request of the foster parents for a summary hearing is denied.