29 A.3d 1116

NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF–RESPONDENT, v. D.P. AND O.B., DEFENDANTS–RESPONDENTS.

IN THE MATTER OF V.B., A MINOR.

Superior Court of New Jersey
Appellate Division

Argued October 5, 2011—Decided November 3, 2011.

584

Before Judges CUFF, LIHOTZ and ST. JOHN.

*Allison C. Williams* argued the cause for appellants L.C. and S.Z. (*Pitman, Mindas, Grossman, Lee and Moore, P.C.,* attorneys; *Ms. Williams,* of counsel and on the briefs).

*Delia A. De Lisi,* Deputy Attorney General, argued the cause for respondent Division of Youth and Family Services (*Paula T. Dow,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Ms. De Lisi,* on the brief).

*Adrienne Kalosieh,* Assistant Deputy Public Defender, argued the cause for respondent D.P. (*Joseph E. Krakora,* Public Defender, attorney; *Ms. Kalosieh,* of counsel and on the brief).

*Beatrix W. Shear,* Deputy Public Defender, argued the cause for respondent O.B. (*Joseph E. Krakora,* Public Defender, attorney; *Ms. Shear,* of counsel and on the brief).

*James A. Louis,* Deputy Public Defender, argued the cause for minor V.B. (*Joseph E. Krakora,* Law Guardian, attorney; *Mr. Louis,* on the brief).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

We are asked to consider the role of resource parents in the Family Part's determination of the best interests of a child in the legal custody of plaintiff, the Division of Youth and Family Services (Division). Resource parents L.C. and S.Z. appeal from two Family Part orders. The first order, dated March 21, 2011, denied L.C. and S.Z.'s request to intervene in the hearing to determine the best interests of the child placed in their home. The second order, dated April 8, 2011, denied L.C. and S.Z.'s request to stay the court's plan to remove the child from their care pending their review of best interests hearing transcripts and expert reports, and to allow their participation in a new hearing.

On appeal, L.C. and S.Z. assert the trial court erroneously denied intervention, disregarding their status as "indispensable parties" and their standing as the child's "psychological parents." L.C. and S.Z. request reversal of the orders. They maintain the only way to assure the trial court considers all factual information relevant to the child's best interests is to reopen the litigation and allow their full participation. Their position is opposed by the Division, the child's biological parents and the Law Guardian, who advocate for finalization of the child's adoption by a relative as provided in the court approved plan.

Following our review, we determine the trial court fully abided all statutory provisions governing a resource parent's participation in litigation involving a child entrusted to their care by the Division. This process, as designed by the Legislature, assures protection of the child's best interests by permitting resource parents the opportunity to impart information to the Family Part, but otherwise precludes their participation as a party in the litigation. We conclude resource parents present no individual

legal claim sanctioning their right to discovery or intervention in a best interests hearing. Accordingly, we affirm.

These facts provide context for our examination of this question of law. V.B., the child who is the center of this controversy, was born on July 16, 2009 to her natural parents, defendants D.P. and O.B. The Division sought custody of V.B. after learning the infant suffered in utero exposure to cocaine and opiates, compelling her inpatient hospitalization for narcotics withdrawal. At six weeks of age, V.B. was discharged from the hospital and placed by the Division in the care of resource parents, L.C. and S.Z., where she remained until April 21, 2011.

The Division's investigation for relatives to care for V.B. proved unsuccessful. The child's grandmother was ruled out. So was her aunt S.B. when the Division determined her home was unsafe, obviating licensure approval. Thereafter, based on the biological parents' failure to resolve their substance abuse issues, the Division proposed to seek guardianship of V.B. followed by resource parent adoption.

As the litigation proceeded, S.B. and her husband successfully sought visitation with V.B. D.P. moved for the child to be transferred to S.B.'s care. The court ordered an evidentiary hearing to determine V.B.'s appropriate placement. At some point prior to the hearing, the Division modified its proposed plan for V.B.'s permanent care. Although the Division remained intent on seeking termination of the natural parents' rights, it now proposed S.B. would adopt V.B., not the resource parents.

L.C. and S.Z. filed an order to show cause to intervene in the best interests hearing. They certified: "As [V.B.]'s daily caregivers, we have a lot of information that may not be known to the other parties or their experts." Additionally, L.C. and S.Z. sought "the right to participate in the [b]est [i]nterest[s] hearing, ... [to] advocate for [V.B.]'s interests, as well as [their] own interests, to keep [V.B.] in [their] family." L.C. and S.Z. also desired to review the parties' experts' reports in preparation for the hearing and sought the opportunity to obtain their own expert.

In support of the motion, L.C. and S.Z. explained V.B. had adapted well to their home and was very attached to each of them. L.C. and S.Z. maintained they were V.B.'s psychological parents such that continued placement with them was in the child's best interests. They attached expert statements from V.B.'s pediatrician and a psychologist.[1]

V.B.'s physician said:

I would be seriously concerned about [V.B.]'s wellbeing and future if she were to be removed from this optimal environment in which she is doing so well despite her early life experience. I would have special concerns about both the short-term and long-term risks associated with disrupting [V.B.]'s bonded parent-child relationships with [L.C. and S.Z.] after being in their care her whole life.

Also, David Brodzinsky, Ph.D., an expert in child development and clinical psychology, opined that severing the relationship between V.B. and her foster parents to place her with biological relatives "cannot be presumed to outweigh the risks of disrupting a child's secure attachment[.]"

All parties to the litigation filed briefs objecting to L.C. and S.Z.'s motion to intervene. In its March 21, 2011 order, the Family Part denied the motion and declined to stay its order so that the best interests hearing commenced that day.[2] L.C. and S.Z. were permitted to voice their positions in a statement to the court on the second and final hearing date.

During the hearing, D.P. and O.B. joined in the Division's proposal to place V.B. with S.B. The Law Guardian, however, disagreed, asserting "it was in [V.B.]'s best interests to remain with [L.C. and S.Z.]." S.B. and her husband expressed their willingness to assume V.B.'s care and to adopt her if permitted. The court also heard testimony from three psychological experts: Frank J. Dyer, Ph.D., for the Division; Antonio W. Burr, Ph.D., for the Law Guardian; and Marc Friedman, Ph.D., for D.P.

---

[1] These documents were quoted in and purportedly attached to the parties' supporting certification; however, they are not included in the record.

[2] By our orders dated March 22 and March 24, 2011, we denied L.C. and S.Z.'s emergent motion to stay the proceedings pending interlocutory review.

L.C. and S.Z. spoke in opposition to the Division's plan. They articulated their concerns regarding the effects of V.B.'s removal from their home and presented their position regarding the child's best interests.[3]

In a written opinion, the trial court concluded "[t]he appropriateness of placement of [V.B.] with [her relatives] was only confirmed by the testimony taken at the best interests hearing." [4] Accordingly, the court entered an order directing the Division to develop a plan to place V.B. with S.B., a plan supported by D.P. and O.B., who later consented to the surrender of their parental rights, allowing S.B. to adopt V.B.

L.C. and S.Z. filed a second order to show cause seeking to stay the transfer of V.B.'s physical custody. They requested limited discovery, including transcripts of the best interests hearing, and the opportunity to present additional evidence showing V.B.'s best interests precluded her separation from her resource parents. On its own motion, the trial court stayed the order dismissing the litigation, pending its review.

Judge Margaret M. Foti denied L.C. and S.Z.'s motion, concluding "given the facts presented ... there [was] little doubt ... a court [would] inevitably make a finding that the Division did not act reasonably when it failed to place [V.B.] with her relatives" and found continued delay would "only serve to increase the risk of long term harm to [V.B.] and is not in her best interests." The court also found no basis to support intervention by L.C. and S.Z., noting the points raised on the child's behalf were "adequately represented" by the Law Guardian. Judge Foti determined granting intervention would "unduly delay or prejudice the rights of the original parties." Finally, the judge examined the applica-

---

[3] We have not been provided with the transcripts of the proceeding and glean our comments from the briefs and court orders.

[4] The parties to the litigation consider the court's opinion confidential and L.C. and S.Z. have not received a copy. The Division provided a copy in its confidential appendix.

ble statutory provisions and court rule, concluding resource families, like L.C. and S.Z., were entitled to written notice of "any review or hearing" and an opportunity to make a statement at the hearing, but not to be made parties to the case. Finding all statutory requirements were met, the trial court denied the motion.

On appeal, L.C. and S.Z. argue the court erroneously denied intervention after concluding they lacked standing to oppose removal of V.B. from their home. Further, they advance their participation in the hearing should have been permitted because they are V.B.'s psychological parents. We will consider each of these issues.

■ In our review, we note our usual deference to the special expertise of the family court, *N.J. Div. of Youth & Family Servs. v. E.P.*, 196 *N.J.* 88, 104, 952 *A.*2d 436 (2008), is inapplicable because these issues before us involve "[a] trial court's interpretation of the law and the legal consequences that flow from established facts[.]" *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

■ Intervention as of right is appropriate where a party not named in the litigation (1) "claims an interest relating to the property or transaction which is the subject of the action," (2) shows she "is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest," (3) demonstrates her "interest is [not] adequately represented by existing parties," and (4) files a "timely" application to intervene. *R.* 4:33-1. *See also Meehan v. K.D. Partners, L.P.*, 317 *N.J.Super.* 563, 568, 722 *A.*2d 938 (App.Div.1998). In reviewing a request to intervene pursuant to *Rule* 4:33-1, once a movant meets the rule's requirements, intervention must be permitted. *Am. Civil Liberties Union of N.J., Inc. v. Cnty. of Hudson*, 352 *N.J.Super.* 44, 70, 799 *A.*2d 629 (App.Div.), *certif. denied*, 174 *N.J.* 190, 803 *A.*2d 1162 (2002). Permissive intervention pursuant to *Rule* 4:33-2, requires a trial court to liberally determine " 'whether intervention will unduly delay or prejudice the adjudication of

the rights of the original parties.'" *Ibid.* (quoting *Zirger v. Gen. Accident Ins. Co.,* 144 *N.J.* 327, 341, 676 *A.2d* 1065 (1996)).

In this matter, L.C. and S.Z. suggest intervention should have been permitted to assure all facts regarding V.B.'s best interests were fully aired. They note the Law Guardian did not call them or V.B.'s pediatrician as witnesses or even "talk to them in advance of the best interest[s] hearing to get information to prepare her case." Their comments imply the efforts made by the Law Guardian were unsatisfactory, insisting they would have cross-examined the Division's expert for a "full afternoon or longer[,]" comparing his opinion regarding V.B. to his testimony in prior cases where he identified the "devastating separation trauma" and "long-term consequences" resulting from "broken attachments" of a child removed from his or her resource parents when less than two years old.

L.C. and S.Z. also maintain their participation in the best interests hearing was essential to protect their individual interests, which were not represented by the Law Guardian. The import of this assertion was their desire to prevent the disintegration of their family upon the removal of V.B.

We discern no abuse of discretion in the court's denial of permissive intervention, as L.C. and S.Z. sought to advance their separate view of V.B.'s best interests. The Law Guardian, as the child's independent legal representative, was an original party to the litigation and advocated against disruption of V.B.'s placement by presenting evidence and expert testimony evincing the expected harm upon her removal. Additionally, L.C. and S.Z. participated in all bonding evaluations conducted by the three experts, during which they offered their concerns and input as to the child's needs. Finally, L.C. and S.Z., as the child's caregivers, presented a statement to the court voicing their opposition to the Division's proposal for V.B.'s placement.

The evidence presented by the Law Guardian and the Division fully exposed the potential short-term harm V.B. would suffer from a loss of her current attachment figures, L.C. and S.Z. Judge

Foti deliberately weighed the experts' concerns for V.B.'s future well-being, and the possible long-term effect resulting from disruption of these bonds against the benefits of a relative placement. The trial court's assessment reflected on the duration of V.B.'s current placement, the advancements she has made in the care of L.C. and S.Z., as well as the depth of her love for her foster parents. Finally, Judge Foti evaluated the competence, sensitivity, patience, responsiveness, and devotion of all possible caregivers. It is clear the trial judge's decision regarding the appropriateness of V.B.'s transfer to S.B. properly balanced the evidence of all necessary considerations and was not merely a preference for a relative placement over care by her resource parents, as L.C. and S.Z. theorize.

We have no basis to question whether concerns held by L.C. and S.Z. were thoroughly presented by the Law Guardian, the party charged with objectively protecting V.B.'s "welfare and interests[.]" *In re Adoption of a Child by Mercado,* 182 *N.J.Super.* 628, 630, 442 *A.*2d 1078 (App.Div.1982) (quoting *In re Adoption by J.J.P.,* 175 *N.J.Super.* 420, 429, 419 *A.*2d 1135 (App.Div. 1980)). *See also N.J.S.A.* 9:6–8.23(a) ("Any minor who is the subject of a child abuse or neglect proceeding ... must be represented by a [L]aw [G]uardian to help protect [her] interests and to help [her] express [her] wishes to the court."). We are not persuaded by speculation that the length of cross-examination was insufficient or that the foster parents should have appeared as witnesses. Further, contrary to L.C. and S.Z.'s suggestion, we cannot draw the inference that the Law Guardian was ineffective in representing V.B.'s interests by not appealing the trial court's determination. Rather, the Law Guardian, in weighing the alternatives, apparently concluded V.B.'s best interests are not served by impeding her adoption by S.B. We turn to the suggestion L.C. and S.Z. were improperly denied intervention as of right granted by *Rule* 4:33–1.

The importance of the essential role of resource parents in the child protective services arena is unquestioned. However, the

legal rights of such caregivers in securing an undisturbed relationship with a child placed in their home are very limited. We determine L.C. and S.Z.'s objective of assuring V.B.'s well-being, while admirable, has, as a matter of legislative preference, been granted to the Law Guardian. Further, this altruistic objective does not rise to a separate cognizable legal interest for which resource parent intervention must be allowed. Therefore, we conclude as resource parents, L.C. and S.Z. have no independent legal interest impaired by denial of intervention in the subject litigation.

The Legislature has established the Division as "the State agency for the care, custody, guardianship, maintenance and protection of children[.]" *N.J.S.A.* 30:4C–2(a). In that role, the Division is authorized to temporarily remove children from the home of their parents or guardians to avert the child's abuse and neglect, *N.J.S.A.* 9:6–8.21 to –8.73, or when the child's best interests are not secured by their parents who are in need of services, *N.J.S.A.* 30:4C–12. Further, the Division is authorized to initiate an action to permanently sever the parent-child relationship when diligent efforts to secure the child's safe return to a parent's home have failed. *N.J.S.A.* 30:4C–15. In most cases, pending the litigation, a child involved in a protective services action is ordered to remain in the care, custody and supervision of the Division.

The Division identifies and approves a child's placement with a resource family to provide day-to-day care. The legal relationship between the resource parents and the child emanates through a contract with the Division sanctioned by state law. *See Smith v. Org. of Foster Families for Equal. & Reform,* 431 *U.S.* 816, 845, 97 *S.Ct.* 2094, 2110, 53 *L.Ed.*2d 14, 35 (1977).

The standard contract between the Division and the resource family seeks to give the child in placement a stable, safe, home-life, guided and cared for by accepting, nurturing adults, while recognizing the Division alone holds the responsibility "for making permanent plans for each child placed, including the termination

of placement." Under the terms of this contract, resource parents specifically agree not "to make their own plans for the child's future" and accept their role of "preparing the child for any major changes in his/her living situation, including leaving the home."

So too, securing adoption of a child under the protection of the Division occurs only through the Division's actions. *In re A.*, 277 *N.J.Super.* 454, 465, 649 *A.*2d 1310 (App.Div.1994). For example, *N.J.S.A.* 30:4C–26.7 provides resource parents who have cared for a child in placement for fifteen months or more "may apply to the Division ... for the placement of the child with them for the purpose of adoption[.]" The statute designates the Division as the State authority to seek the petition for adoption. It does not grant an independent right to file for adoption to the resource parents. *Ibid.*

The Legislature expressly addressed the vital role resource parents play. Particularly recognizing their superior knowledge of the child's physical and emotional status, resource parents are entitled to "receive written notice of and an opportunity to be heard at any review or hearing held with respect to the child[.]" *N.J.S.A.* 9:6–8.19a. *See also N.J.S.A.* 30:4C–12.2 (granting resource family right to notice and the right to be heard at a review or hearing with respect to the child); *N.J.S.A.* 9:3–45.2 (including a similar provision in action relating to the adoption of a child in the Division's custody). Further, this right is echoed in the Supreme Court's adoption of *Rule* 5:12–4(i), which requires the Family Part judge to

ensure that the foster parent ... currently providing residential care to the child is given notice of all hearings ... in writing ... [including] the date, time, and location of the hearing ..., and that he or she has a right to appear at that time to make a statement to the court of his or her views regarding the case and the interests of the child.

L.C. and S.Z. rely on *Doe v. State,* 165 *N.J.Super.* 392, 398 *A.*2d 562 (App.Div.1979), *summarily remanded on other grounds,* 82 *N.J.* 303, 412 *A.*2d 808 (1980), to support their assertion that they should have been granted the right to intervene in the best interests hearing. In *Doe, supra,* the Division removed a foster

child from her foster family and returned her to her biological parents. *Id.* at 397, 398 *A.*2d 562. The Division's action triggered the dismissal of the foster parents' Superior Court action seeking to restrain increased visitation with the biological parents, grant termination of parental rights, and allow foster parent adoption. *Id.* at 396–97, 398 *A.*2d 562. The Division's administrative action of removing the child was not subject to the judicial oversight found in a Title Nine or Title Thirty action. *See id.* at 397, 398 *A.*2d 562.

First, we affirmed the Superior Court's dismissal of the foster parent initiated guardianship action, noting the true issue was the propriety of the Division's administrative return of the child to her parents. *Id.* at 399–400, 398 *A.*2d 562. After concluding jurisdiction to challenge an agency decision rested in the Appellate Division, not the Superior Court, we proceeded to review the administrative decision. *Id.* at 400, 398 *A.*2d 562. Accepting the Division "was not foreclosed 'from providing . . . a plenary hearing [with foster parent participation] as a matter of discretionary administrative policy[,]' " *id.* at 403, 398 *A.*2d 562 (quoting *W.C. v. P.M.,* 155 *N.J.Super.* 555, 564, 383 *A.*2d 125 (App.Div.), *certif. denied,* 75 *N.J.* 606, 384 *A.*2d 836 (1978)), we determined our review of the Division's denial of the foster parent's request for a plenary hearing on the removal of the child "require[d] examination of the record to see if, in the circumstances of this case, there has been an abuse of administrative discretion." *Ibid.* Limited to the "circumstances existing," we discussed the foster parent's standing to insist upon a hearing, call witnesses, have discovery, and cross-examine witnesses. *Id.* at 406, 384 *A.*2d 836.

In dicta, we remarked on the broad authority granted to the Family Part to determine a child's best interests under the newly adopted Child Placement Review Act (Act), *N.J.S.A.* 30:4C–50 to –65.[5] *Id.* at 403–04, 384 *A.*2d 836. We identified specific rights

---

[5] Although *Doe* was decided after the Act was adopted in 1978, the dispute was not governed by its provisions. *Doe, supra,* 165 *N.J.Super.* at 409, 398 *A.*2d 562.

granted to foster parents with respect to a child's placement including the right to receive notice and the right to provide a statement "if the court determine[d] that the foster parents have information relating to the welfare of the child" pursuant to *N.J.S.A.* 30:4C–61(c). *Id.* at 404, 384 *A.*2d 836.

*Doe* discussed the principle that a resource parent has a direct right to challenge the administrative removal of a child whose placement was changed by the Division, particularly when removal resulted from an action, or possibly an omission, by that resource parent. *See id.* at 397, 398 *A.*2d 562; *N.J.A.C.* 10:120A–2.5. The implication in *Doe* was removal of the child resulted because the foster parents challenged the Division's slow response in finalizing her placement by independently seeking guardianship. *See Doe, supra,* 165 *N.J.Super.* at 397, 398 *A.*2d 562.

Since *Doe,* we have had occasion to examine contests resulting from third-party challenges to the Division's placement decisions. In *In re A., supra,* issues arose regarding a child's placement when his mother, a recovering substance abuser, revoked a voluntarily placement agreement granting the Division custody. 277 *N.J.Super.* at 459, 649 *A.*2d 1310. The day of the child's return to his mother's care, the foster parents filed an emergent action seeking to stay reunification efforts. *Id.* at 459–60, 649 *A.*2d 1310. The court initially denied the foster parents' request for discovery, but later permitted review of the Division's file. *Id.* at 460, 649 *A.*2d 1310. The Superior Court judge then scheduled a hearing; however, a consent order was reached between the parties, delaying the child's return and requiring the mother to meet certain conditions. *Ibid.* The foster parents amended their complaint to seek custody, guardianship and termination of parental rights, noting the child had lived with them for over two years. *Ibid.* The hearing lasted ten days. *Id.* at 461, 649 *A.*2d 1310. The court concluded the foster parents lacked standing for the relief sought, and if standing were available, they nevertheless failed to prove termination of parental rights and guardianship were appropriate. *Ibid.* The judge ordered reunification to continue. *Ibid.*

We reviewed the foster parents' challenge to the dismissal of their guardianship action, noting

[u]nder *N.J.S.A.* 30:4C–61 the court may schedule summary hearings to determine the proper course for a child's placement. The statute states that [t]he court may also request or order additional information from any other persons or agencies which the court determines have an interest in or information relating to the welfare of the child.

[*Id.* at 466, 649 *A.*2d 1310 (quoting *N.J.S.A.* 30:4C–61(c)).]

In our opinion we did not directly confront the issue of standing, rather we found the trial court had not abused its discretion by permitting the foster parents' participation in the placement hearing. *Ibid.* We also determined [i]t was within the judge's discretion ... to disallow additional psychological evaluations and other discovery because a number of psychologists had examined the child and ample witnesses testified to the issues raised by plaintiffs. *Id.* at 466–67, 649 *A.*2d 1310.

We emphasized the Court's prior directive that the best interests of the child does not mean the better interests of the child as they relate to the financial or educational background of foster or adoptive parents. *Id.* at 467–68, 649 *A.*2d 1310 (citation and internal quotation marks omitted).

In *In re E.M.B.*, 348 *N.J.Super.* 31, 33, 791 *A.*2d 256 (App.Div. 2002), we reviewed a dispute between the Division, the maternal grandparents, and the child placement review board (CPRB), "concerning the goal of the permanency placement plan for children whose birth parents' parental rights have been terminated." The Division proposed foster parent adoption rather than adoption by the grandparents. *Ibid.* The CPRB favored adoption by the grandparents and the Family Part ordered a summary hearing to review the dispute. *Ibid.* The Division objected because an administrative review of the placement decision was being processed. *Id.* at 40, 791 *A.*2d 256. The court ordered the Division to follow the CPRB plan, mooting the administrative review and prompting the Division's appeal. *Id.* at 41, 791 *A.*2d 256.

We reviewed the applicable provisions of the Act that discuss the role of the CPRB and the Family Part when a child's out-of-

home placement is at issue. *Id.* at 42–45, 791 *A.2d* 256. Noting there was "no dispute that the children have bonded with both the foster parents and with the grandparents[,]" we concluded the Family Part, when reviewing a permanency determination, must examine "the degree of those bonds and their import and impact on the permanency placement plan." *Id.* at 51, 791 *A.2d* 256.

In *In re C.R.*, 364 *N.J.Super.* 263, 266, 835 *A.2d* 340 (App.Div. 2003), *certif. denied*, 179 *N.J.* 369, 845 *A.2d* 1252 (2004), we examined a Law Guardian's challenge supported by the G.s, the prospective foster parents, to the Division's placement of a child in a different pre-adoptive home, understanding guardianship was inevitable. The Division declined to place the child with the G.s as advocated by the Law Guardian, despite the fact that three natural siblings of the child were cared for by the G.s. *Ibid.* The Law Guardian petitioned the Family Part judge to conduct a summary hearing under the Act to determine which placement would be in C.R.'s best interests. *Id.* at 267, 835 *A.2d* 340. We reversed the judge's denial of the petition based on a perceived lack of jurisdiction to review the Division's proposed placement decision. *Ibid.* We determined "a sufficient showing was made by the [L]aw [G]uardian … to establish the reasonable plausibility that [the child]'s best interests would be served by a permanent placement plan providing for her placement for adoption with the [G.s,]" and recognized the Division's placement position that the G.'s home was too populated and could not satisfactorily accommodate the child's needs, "was also reasonably plausible." *Ibid.*

We held the Act contemplated an independent judicial review of the Division's permanency plan and concluded "jurisdiction to resolve the dispute lies in the Family Part, which ha[d] an obligation to conduct a full evidentiary hearing to determine what permanent placement plan [wa]s in [the child]'s best interests." *Id.* at 267–68, 835 *A.2d* 340. Again, in light of the action initiated by the Law Guardian, the issue of the foster parents' standing was not reached.

These authorities inform our review as they clearly direct our attention to the Act as governing the rights and responsibilities of the parties, the court, and others interested in the child's well-being, such as the resource parents. The Act at *N.J.S.A.* 9:6–8.19a affords resource parents notice of court hearings and the opportunity to appear and provide a statement on any issue involving the child in a pending Title Nine action. A companion provision appears in Title Thirty at *N.J.S.A.* 30:4C–61(c)(7) and at *N.J.S.A.* 9:3–45.2 in adoption proceedings. These statutes allow resource parents the right to voice their objections to a proposal to remove the child from their care. However, the Legislature clearly circumscribed this right, stating "the resource family[,] parent or relative shall not be made a party to the review or hearing solely on the basis of the notice and opportunity to be heard." *N.J.S.A.* 9:6–8.19a. *See also N.J.S.A.* 9:3–45.2 (affording similar rights to resource parents in adoption actions); *N.J.S.A.* 30:4C–12.2 (same in guardianship actions). Further, *Rule* 5:12–4(i) reinforces this limitation, stating, "[t]he notice shall further state that, in accordance with law, such person is not made a party to the case and that he or she may not be permitted to be present in the courtroom except for purposes of making a statement to the court."

In accordance with "[t]he primary rule of statutory construction[,]" we examine "the plain words used in the statute[,]" *N.J. Div. of Youth & Family Servs. v. L.L.*, 201 *N.J.* 210, 221–22, 989 *A.*2d 829 (2010), to ascertain the Legislature's intent regarding the role of resource parents in Title Nine and Title Thirty litigation. Based on our review, we conclude the right to inform the court does not impart a legal interest or an expectation to engage experts, demand discovery, appear in the action or cross-examine witnesses. We are convinced the limited and temporary character of foster care remains the legislative policy of this State. *See W.C., supra,* 155 *N.J.Super.* at 565, 383 *A.*2d 125 (observing "[f]oster care is designed as a temporary palliative to care for children whose parents are unable to do so for one or more reasons").

Undoubtedly, the Division's primary goal of returning children to their parents would be undermined if resource parents vied for permanent placement of a child entrusted to their care. *Ibid.; see also K.D.D. v. Scalara,* 273 *N.J.Super.* 353, 361, 641 *A.*2d 1118 (Ch.Div.1993) (quoting *W.C., supra,* 155 *N.J.Super.* at 565, 383 *A.*2d 125) ("To surround a foster parent with greater rights than those contemplated by the legislative system would permit them to interfere with the delegated function of the Division and the paramount right of the parent to the re-entry of the children into the natural family unit."). Moreover, the contract L.C. and S.Z. executed with the Division reveals that they accepted V.B. into their home with full knowledge her placement was to provide a foster home. Their reasonable expectation could not have been that V.B.'s placement was permanent.

We repudiate any previously espoused premise extrapolating our determination in *Doe. See In re A., supra,* 277 *N.J.Super.* at 463, 649 *A.*2d 1310 (drawing attention to trial courts' attempted expansion of foster parent rights). We specifically reject the suggestion made in *N.J. Div. of Youth & Family Servs. v. D.T.,* 171 *N.J.Super.* 520, 526, 410 *A.*2d 79 (J. & D.R. Ct.1979), that "[t]he trend appears to be that foster parents should have standing in court on matters affecting their foster children." Rather, we firmly establish that the Legislature's specific direction expressed in *N.J.S.A.* 9:6–8.19a, *N.J.S.A.* 9:3–45.2 and *N.J.S.A.* 30:4C–12.2, denying resource parents status as a party, equally restricts their right to intervene to act like a party. *See L.L., supra,* 201 *N.J.* at 222, 989 *A.*2d 829 ("When the words of the statute are clear, we should enforce the statute as written.").

This decision does not foreclose the rare instances when the parties may request, or the trial court may determine, a need exists for an appearance by the resource parents to provide specific information to the court not otherwise available to the parties. Even under such a scenario, the resource parents may not assume an active role of advocacy by calling witnesses or employing experts.

This matter, unlike the Division's unilateral determination to remove the child in *Doe*, involved a full evidentiary review with participation of the Division, the parents, and the Law Guardian. Three experts offered competing theories of the potential harm resulting from disrupting V.B.'s placement. Also, as required by *N.J.S.A.* 9:6–8.19a, L.C. and S.Z. were afforded all process they were due: they offered their concerns to the Division and the Law Guardian and presented statements in opposition to the Division's plan. The court additionally considered V.B.'s rights as established by the Child Placement Bill of Rights Act, *N.J.S.A.* 9:6B–4(b), which provides in pertinent part:

> A child placed outside his home shall have the following rights, consistent with the health, safety and physical and psychological welfare of the child and as appropriate to the individual circumstances of the child's physical or mental development:
>
> ....
>
> b. To the best efforts of the applicable department, including the provision or arrangement of financial or other assistance and services as necessary, to place the child with a relative[.]

Nothing shows the proceeding as constituted failed to fully and fairly present sufficient facts for the court's determination of V.B.'s best interests.

We are satisfied Judge Foti's determination weighed all relevant evidence, ever mindful that some harm would occur upon removing V.B. from the loving care of L.C. and S.Z., but nonetheless finding any such harm would be satisfactorily ameliorated by S.B. and her husband's commitment to the child. *See In re J.P.*, 198 *N.J.Super.* 166, 172, 486 *A.*2d 907 (App.Div.1985) (holding "whether the foster home is a better home or the foster parents are better parents did not control" a decision to place a child). Balancing all evidence, Judge Foti concluded V.B.'s best interests require she leave her resource family to commence her life with her biological relatives.

L.C. and S.Z. also argue they have standing as V.B.'s psychological parents. We disagree.

The psychological parent doctrine was refined by our Supreme Court in *V.C. v. M.J.B.*, 163 *N.J.* 200, 748 *A.*2d 539, *cert.*

*denied,* 531 *U.S.* 926, 121 *S.Ct.* 302, 148 *L.Ed.2d* 243 (2000). In order to determine whether a party is a psychological parent, a party must establish:

> [ (1) ] the legal parent must consent to and foster the relationship between the third party and the child; [ (2) ] the third party must have lived with the child; [ (3) ] the third party must perform parental functions for the child to a significant degree; and [ (4) ] most important, a parent-child bond must be forged.
>
> [*V.C., supra,* 163 *N.J.* at 223, 748 *A.2d* 539.]

■ A party designated with the legal title of psychological parent "stands in parity with the legal parent." *Id.* at 227, 748 *A.2d* 539 (citing *Zack v. Fiebert,* 235 *N.J.Super.* 424, 432, 563 *A.2d* 58 (App.Div.1989)). Therefore, psychological parents have standing to bring a custody suit which is "then determined on a best interests standard, as if two legal parents were in conflict[.]" *P.B. v. T.H.,* 370 *N.J.Super.* 586, 596–97, 851 *A.2d* 780 (App.Div.2004).

■ We concur with the Division's position that it never conferred custody upon the foster parents as required by the first prong of the psychological parent test. In *V.C.,* the Court noted psychological parenting can be created only where the legal parent cedes "a measure of parental authority and autonomy" to the third party, granting "that third party rights and duties vis-à-vis the child that the third party's status would not otherwise warrant." *V.C., supra,* 163 *N.J.* at 224, 748 *A.2d* 539. Accordingly, "a relationship based on payment by the legal parent to the third party [like a paid nanny or babysitter] will not qualify." *Ibid.*

Pursuant to the terms of the resource family contract, L.C. and S.Z. opened their home to V.B., who then stole their hearts. The protective services´system values adults like L.C. and S.Z., who have optimally fulfilled their role as resource parents. The commitment, care, sacrifice and unconditional love L.C. and S.Z. nobly conferred on V.B. will forever alter the course of her life. Nevertheless, the emotional ties that unavoidably developed neither result in psychological parent status nor otherwise confer an

interest permitting standing to intervene in a Title Nine best interests hearing.

Affirmed.