# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1548-19T2

F.F.,

    Appellant,

v.

NEW JERSEY DEPARTMENT OF
CHILDREN AND FAMILIES,

    Respondent.

Submitted June 30, 2020 – Decided July 20, 2020

Before Judges Messano and Rose.

On appeal from the New Jersey Department of Children and Families, AHU No. 19-0157.

Afonso Archie & Foley, PC, attorneys for appellant (Eric R. Foley, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Juliana L. Stiles, Deputy Attorney General, on the brief).

PER CURIAM

F.F., a non-relative resource parent, appeals from a December 4, 2019 final decision of the Department of Children and Families (DCF), upholding a decision of the Division of Child Protection and Permanency (Division) that removed minor children, Kr. H. (Kristen) and Kl. H. (Kaitlyn), born August 2016, from F.F.'s care and placed the twin girls with their paternal grandfather, J.H.[1] Shortly before the DCF's decision was issued, the children's mother, J.P., executed an identified surrender of her parental rights to J.H. Following a guardianship trial in the Family Part, the rights of J.J.H., the girls' father, were terminated and a judgment of guardianship was entered on December 5, 2019. Neither parent appealed that determination. Accordingly, Kristen and Kaitlyn, who are nearly four years old, are legally free for adoption by J.H., thereby rendering moot F.F.'s appeal. For the sake of completion, we nonetheless briefly address F.F.'s contentions and find they lack merit.

I.

We derive the facts from the limited record on appeal. In December 2017, Kristen and Kaitlyn were placed in F.F.'s care. While the Title Nine action was pending, J.H. came forward as a potential placement. Visits between the girls

---

[1] We use initials of those involved to maintain their privacy, see R. 1:38-3(d)(12), and pseudonyms for the children for ease of reference.

and their grandfather commenced in August 2018 and eventually included overnight stays. Beginning in October 2018, however, F.F. repeatedly complained to the Division's local office manager that the children returned to her home with bruises and smelled of cigarette smoke. The Division investigated F.F.'s allegations and determined they were unfounded "with no concerns noted." Accordingly, on February 4, 2019, the Division removed Kristen and Kaitlyn from F.F.'s home and placed the girls with J.H.

Four days later, F.F. moved for custody of the girls and the right to intervene in the Family Part litigation. The trial court denied F.F.'s application; F.F. apparently did not appeal from that decision.[2] The following month, F.F. requested an administrative review of the Division's determination. Citing N.J.A.C. 3A:5-3.1(a)(2),[3] the DCF denied F.F.'s request for a hearing, finding "a resource parent is not eligible for a dispositional review when a child is placed

---

[2] The trial court's order is not contained in the record on appeal.

[3] N.J.A.C. 3A:5-3.1(a)(2) ordinarily requires a dispositional review if a resource parent (emphasis added):

> disagrees with the removal of a child receiving foster care in his or her resource home when the child has been residing with the resource parent for at least six months, except when . . . [t]he child is not being returned to a birth parent or relative . . . .

with a relative." F.F. appealed the DCF's decision to our court, but withdrew her appeal when the agency reconsidered its decision.

On December 4, 2019, an Administrative Review Officer (ARO) issued a letter opinion affirming the Division's decision to remove Kristen and Kaitlyn from F.F.'s home and place them with F.F. The ARO's decision followed a dispositional review, which included testimony from F.F., documents submitted on her behalf, and the Division's case materials and policy. In his decision, the ARO acknowledged F.F.'s "genuine concern" for the children and that they "would be safe with either [F.F.] or their paternal grandfather, [J.H.]." Nonetheless, the ARO concluded the children's placement with J.H. was appropriate and consistent with the Division's policy, which "prioritizes placements [with] relatives whenever possible." This appeal followed; shortly thereafter, we denied F.F.'s motion to stay the girls' adoption. As of the filing of the Division's brief in May 2020, "[t]he plan for the children's adoption by their grandfather [wa]s moving forward."

On appeal, F.F. argues,

> THE FINAL AGENCY DECISION OF THE
> DEPARTMENT OF CHILDREN AND FAMILIES
> SHOULD BE REVERSED AND THE AGENCY
> SHOULD BE DIRECTED TO PLACE THE MINOR
> CHILDREN WITH F.F. OR IN THE ALTERNATIVE
> THE MATTER SHOULD BE REMANDED FOR A

4

HEARING WITH A VERBATIM RECORD BECAUSE THE DECISION WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE.

A. The record is lacking substantial evidence to support the findings.

B. The final agency decision not only lacks a factual basis for the decision but the decision is also not supported by the relevant legal consideration.

The DCF counters that the judgment of guardianship rendered moot F.F.'s appeal; nonetheless its final decision was not arbitrary, capricious or unreasonable and is supported by the credible evidence in the record. F.F. filed a reply brief, arguing her appeal is not moot because "the outcome of the appeal impact[s] the existing controversy" and review of the DCF's decision falls within our exclusive jurisdiction.

II.

The Division is charged with the responsibility for the "care, custody, guardianship, maintenance, and protection of children." N.J.S.A. 30:4C-2(a). To ensure that all children requiring foster care are placed in safe homes, the Division is statutorily authorized to create and implement rules and regulations. See N.J.S.A. 30:4C-26(a); 30:4C-4(h). Such regulations are "designed to insure that all children requiring foster care are placed in safe homes with nurturing

substitute families who can meet their individual needs." State ex rel. J.B., 293 N.J. Super. 485, 489 (Ch. Div. 1996).

"The legal relationship between the resource parent[] and the child emanates through a contract with the Division sanctioned by state law." N.J. Div. of Youth & Family Servs. v. D.P., 422 N.J. Super. 583, 593 (App. Div. 2011) (citing Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 845 (1977)) (concluding that unlike natural families whose liberty interests are rooted in intrinsic human rights, "whatever emotional ties may develop between foster parent and foster child have their origins in an arrangement in which the State has been a partner from the outset."). While resource parents serve an essential purpose in child protective services, their "legal rights . . . in securing an undisturbed relationship with a child placed in their home are very limited." Id. at 592-93.

For example, a resource parent has the right to object to a proposed removal of a child from his or her care. See N.J.S.A. 30:4C-12.2. However, the Legislature clearly circumscribed that right, stating "the resource family[,] parent or relative shall not be made a party to the review or hearing solely on the basis of the notice and opportunity to be heard." Ibid.; R. 5:12-4(i); D.P., 422 N.J. Super. at 599. Further, "[u]nder the prevailing statutory scheme, N.J.S.A. 30:4C-

20 to -22, once a trial court terminates parental rights and reposes guardianship in [the Division], the post-termination guardianship authority of [the Division] is plenary, as 'absolute' as that of a parent." S.R. v. Div. of Youth & Family Servs., 311 N.J. Super. 431, 435 (App. Div. 1998).

Here, F.F. contends, without documentary support, that Kristen and Kaitlyn bonded with her during their fourteen-month placement and that their removal from F.F.'s home was not in the children's best interests. While F.F. correctly notes there exists no presumption in favor of placement with relatives, see N.J. Div. of Youth & Family Servs. v. K.L.W., 419 N.J. Super. 568, 580 (App. Div. 2011), F.F. ignores the Division's statutory obligation to search for relative placements. See N.J.S.A. 30:4C-12.1 (requiring DCF to "initiate a search for relatives who may be willing and able to provide the care and support required by the child" in its care or custody); see also N.J. Div. of Child Prot. and Permanency v. K.N., 435 N.J. Super. 16, 29 (App. Div. 2014), aff'd as modified, 223 N.J. 530 (2015).

Moreover, Mother executed an identified surrender of her parental rights to J.H. As the DCF aptly argues, if the children's permanency plan were disrupted by their removal from J.H.'s home, "[M]other's identified surrender would be vacated, and the case would return to the trial court for a determination

about her parental rights."  But, the children would not be returned to F.F., "who currently does not hold a valid resource home license."  Because Mother surrendered her parental rights on the condition that J.H. adopt Kristen and Kaitlyn, F.F.'s challenge to their removal is moot.  See N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 261 (App. Div. 2009) (citation omitted) (recognizing "[a]n issue is moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy").  In essence, we cannot grant effective relief because we cannot award F.F. custody of Kristen and Kaitlyn.

Nonetheless, we have considered F.F.'s contentions on the merits in view of the record and applicable legal principles, and conclude they are without sufficient merit to warrant discussion in this written opinion.  R. 2:11-3(e)(1)(E). Pursuant to our limited standard of review, In re Herrmann, 192 N.J. 19, 27 (2007), we affirm substantially for the reasons expressed in the ARO's cogent written decision, which "is supported by sufficient credible evidence on the record as a whole."  R. 2:11-3(e)(1)(D).  We add only the following remarks.

The ARO considered F.F.'s testimony and the documentary evidence presented and determined the Division appropriately removed Kristen and Kaitlyn from F.F.'s home and placed them with their paternal grandfather.

8

Although F.F.'s "genuine concern" for the children is undisputed, the ARO noted F.F.'s allegations against J.H. care were unfounded. The ARO also cited the Division worker's notes, "which stated that if future placements are presented to [F.F.], the children should be legally free before considering placement." That contact sheet further state's F.F's "behavior has been problematic as she has attempted to stop the children from being reunified with family members. [F.F.] has made numerous allegations against [J.H.] and placed a barrier in the plan for placement."

While we are sensitive to the care and concern F.F. has expressed for Kristen and Kaitlyn, there is nothing arbitrary, capricious or unreasonable about the DCF's decision, upholding the Division's removal and placement of the girls with their paternal grandfather, who intends to adopt them. Simply put, the children's need for permanency trumps F.F.'s objection to their removal from her care.

Dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION